**Robert A. SPIRA, Plaintiff,**

v.

**Larry K. NICK and Sharon Kaufman Nick, Defendants.**

**No. 94 Civ. 7066 (LAK).**

United States District Court,
S.D. New York.

Feb. 24, 1995.

Wayne P. Jordan, New York City, for plaintiff.

Scott N. Fein, Elizabeth M. Morss, Whiteman Osterman & Hanna, Albany, NY, for defendants.

## MEMORANDUM AND ORDER

KAPLAN, District Judge.

The plaintiff in this case, an investor in two investment vehicles controlled by defendant Larry Nick, claims that Nick and his wife have embezzled large sums of money from a substantial number of Nick-dominated entities. They bring a host of State law-based claims, including claims of fraud and conversion, purportedly on behalf of a class of all investors in Nick-controlled entities. The only alleged basis of federal jurisdiction is two causes of action for alleged conspiracies to violate the Racketeer Influenced and Corrupt Organizations Act ("RICO"). The defendants move to dismiss the RICO claims for failure to allege fraud with particularity and failure to state a claim upon which relief may be granted. Plaintiff cross-moves for a preliminary injunction and for the appointment of a receiver for the Nick entities *pendente lite*.

### Facts

The core of the complaint is a claim that Larry Nick abused his position as a general partner or principal shareholder of various limited partnerships and corporations. He is said to have diverted money from these entities for his personal use and to have disposed of certain partnership and corporate assets without allegedly required consents of other investors. Nick's wife, Sharon Kaufman Nick, is named as a defendant on six of the

twelve counts, including both RICO conspiracy claims.

Plaintiff has submitted an affidavit of Frank Caputi, who was Nick's accountant from July 1987 until June 16, 1994. Caputi makes extensive, sometimes detailed, and generally undocumented allegations supporting plaintiff's claims. Caputi's account is hotly contested by affidavits of Larry Nick, which also are unsupported by documentation in many particulars. Both sides claim to have been handicapped in supporting their positions by reason of the seizure of many of Nick's records by the Federal Bureau of Investigation in June 1994 pursuant to a search warrant. Suffice it to say, for present purposes, that Caputi's assertions, if credited, would state several serious claims against Nick. As will appear, however, it is unnecessary for us to consider most of these allegations in detail in order to resolve the pending motions.

### The Motion to Dismiss

Federal jurisdiction in this case stands or falls with the sufficiency of the RICO claims. Defendants argue that the RICO claims, which are based on predicate acts of mail and wire fraud, should be dismissed for the following reasons:

1. The fraud allegations are not made with the requisite particularity in that the complaint does not (a) identify the statements it claims were false or misleading or give particulars of the respects in which plaintiff contends that the statements were fraudulent, (b) state when and where the allegedly fraudulent statements were made, (c) identify the items mailed and the wire communications relied upon and how each was false or misleading, or (d) adequately allege any basis of liability under RICO with respect to defendant Sharon Kaufman Nick.

2. The RICO allegations all are made on information and belief and therefore do not satisfy Rule 9(b)'s requirement that averments of fraud be made with particularity.

3. The RICO conspiracy counts fail to state a claim upon which relief may be granted because (a) there is no allegation of an agreement by each defendant to commit two predicate acts, (b) the complaint does not adequately allege a pattern of racketeering activity, and (c) the complaint fails to allege the existence of a RICO enterprise.

### Information and Belief Pleading

The operative allegations of the complaint all are made on information and belief.

■ Defendants correctly point out that fraud allegations made on information and belief do not satisfy Rule 9(b) unless the facts are peculiarly within the knowledge of the defendants, in which case the complaint must allege facts demonstrating the basis for the information and belief. *Schlick v. Penn–Dixie Cement Corp.*, 507 F.2d 374, 379 (2d Cir.1974); *Segal v. Gordon*, 467 F.2d 602, 608 (2d Cir.1972); *Devaney v. Chester*, 709 F.Supp. 1255 (S.D.N.Y.1989). The complaint as it stands therefore is deficient.

■ Here it is reasonably plain that the basis for the allegations made in the complaint on information and belief is the information provided by Caputi, Nick's former accountant, which now has been submitted in the form of an affidavit. The information in that affidavit may permit plaintiff to frame a proper complaint with respect to some or all of the energy entities, although it contributes little with respect to the real estate partnerships. In view of the likelihood that plaintiff can frame a legally sufficient complaint, we address the other issues raised by defendant's motion in an effort to forestall further motion practice addressed to the pleadings.

### The Mail and Wire Fraud Allegations

The heart of defendants' claim that the complaint fails to comply with Rule 9(b) rests on the premise that each mailing and wire communication said to constitute a predicate act of mail or wire fraud must be false or misleading. It is this proposition that underlies the argument that plaintiff has failed to specify "the statements [he] claims were false or misleading [and to] give particulars as to the respect in which [he] contend[s] the statements were fraudulent." (Def.Br. 12 *quoting McLaughlin v. Anderson*, 962 F.2d 187, 191 (2d Cir.1992)). The same proposition evidently is the basis for the assertion that Rule 9(b) requires that the temporal and geographic particulars of each alleged mail-

ing and wire communication be alleged with particularity. Defendants, however, misunderstand the mail and wire fraud statutes as they apply in these circumstances and their interrelationship with RICO.

The complaint alleges that Larry Nick was a principal shareholder or general partner of, and thereby controlled, twenty-five corporations and partnerships, some in the energy field and the balance in real estate. He allegedly embezzled funds from these entities in many specifically identified cases relating to the energy partnerships by mailing checks representing the allegedly diverted monies to other persons or entities. In many instances, the complaint identifies the approximate dates, amounts, purposes and payees of the diversions. It alleges further that many, perhaps all, of the diversions were concealed from investors. (*See* cpt ¶¶ 20, 27, 36, 91) It asserts also that, in April 1993, Nick caused one of the entities to file a fraudulent form K–1 with the Internal Revenue Service, evidently for the purpose of concealing the true state of affairs from the limited partners. (*Id.* ¶ 28)

■ Not all of the allegations incorporated in the RICO counts are as specific. In a number of cases, the pleading alleges broadly that fraudulent communications regarding various matters were made to investors through the mails. (*E.g., id.* ¶¶ 32, 38, 47) Notwithstanding the generality of some of the allegations, however, the complaint alleges with a fair degree of specificity that Nick, as a general partner and controlling shareholder of the energy entities, owed fiduciary duties to plaintiff and the other investors which he breached by taking money to which he was not entitled and by concealing and, on occasion, lying about the affairs of these entities. The complaint is entirely conclusory insofar as it relates to the real estate partnerships. We deal first with the allegations concerning the energy entities.

■ The mail fraud statute, 18 U.S.C. § 1341, provides in pertinent part:

"Whoever, having devised or intending to devise any scheme or artifice to defraud, or for obtaining money or property by means of false or fraudulent pretenses, representations, or promises ... for the purpose of executing such scheme or artifice or attempting so to do, places in any post office or authorized depository for mail matter, any matter or thing whatever to be sent or delivered by the Postal Service, or takes or receives therefrom, any such matter or thing ... shall be fined not more than $1,000 or imprisoned not more than five years, or both."

Thus, the elements of the offense are a scheme or artifice to defraud and a mailing in furtherance of the scheme. *E.g., Pereira v. United States,* 347 U.S. 1, 8, 74 S.Ct. 358, 362–63, 98 L.Ed. 435 (1954).

■ Here the scheme is defendants' alleged embezzlement of funds from the investment vehicles they controlled. While common law fraud in most circumstances requires a false representation of a material fact, there is no such requirement under the mail and wire fraud statutes in a case like this.

■ To begin with, the Second Circuit held only last week that the scheme element is satisfied by embezzlement by a fiduciary. *United States v. Altman,* 48 F.3d 96, 101 (2d Cir.1995). Nor need we rest on that basis alone. A breach of fiduciary duty accompanied by concealment or deception also may constitute a scheme or artifice to defraud within the meaning of the mail and wire fraud statutes, at least where the concealment or deception could result in harm. *E.g., Altman, supra; United States v. Weiss,* 752 F.2d 777 (2d Cir.), *cert. denied,* 474 U.S. 944, 106 S.Ct. 308, 88 L.Ed.2d 285 (1985); *United States v. Siegel,* 717 F.2d 9 (2d Cir. 1983); *United States v. Margiotta,* 688 F.2d 108, 121 (2d Cir.1982), *cert. denied,* 461 U.S. 913, 103 S.Ct. 1891, 77 L.Ed.2d 282 (1983); *United States v. Bronston,* 658 F.2d 920 (2d Cir.1981), *cert. denied,* 456 U.S. 915, 102 S.Ct. 1769, 72 L.Ed.2d 174 (1982); *United States v. Barta,* 635 F.2d 999 (2d Cir.1980), *cert. denied,* 450 U.S. 998, 101 S.Ct. 1703, 68 L.Ed.2d 199 (1981). The defendant need not personally use the mails or, for that matter, intend that the mails be employed. *United States v. Kenofskey,* 243 U.S. 440, 37 S.Ct. 438, 61 L.Ed. 836 (1917). Indeed, the

scheme need not contemplate the use of the mails as an essential element. *E.g., Schmuck v. United States,* 489 U.S. 705, 109 S.Ct. 1443, 103 L.Ed.2d 734 (1989). It is sufficient if use of the mails to further the scheme is reasonably foreseeable. *United States v. Maze,* 414 U.S. 395, 400, 94 S.Ct. 645, 648–49, 38 L.Ed.2d 603 (1974); *Pereira,* 347 U.S. at 8–9, 74 S.Ct. at 362–63; *United States v. Bortnovsky,* 879 F.2d 30, 36 (2d Cir.1989).[1]

■■■ In light of these principles, the central premise of defendants' argument fails. The mailings that are elements of the offense need not themselves contain false or misleading statements. *Schmuck,* 489 U.S. at 714–15, 109 S.Ct. at 1449–50. A scheme such as that alleged here—embezzlement by a fiduciary and breach of fiduciary duty coupled with concealment in the face of a duty to speak and other deception—satisfies the scheme element. Foreseeable use of the mails in furtherance of the scheme violates the statute. Inasmuch as each such use of the mails is separately indictable under 18 U.S.C. § 1341, each constitutes an act of racketeering activity under RICO. 18 U.S.C. § 1961(1).

Having thus described the elements of the offense that constitutes the predicate acts, it remains to consider just what level of particularity Rule 9(b) requires.

■■■ Rule 9(b) provides that "[i]n all averments of fraud . . ., the circumstances constituting fraud . . . shall be stated with particularity." Here, the circumstances constituting the fraud—the relationships giving rise to the fiduciary duties owed by Nick, the details of the alleged embezzlement, and the concealment—generally are stated with particularity. The complaint alleges, among other things, specific diversions of funds, giving in most cases the approximate dates, amounts and purposes. Thus, Rule 9(b) is satisfied as

to the core of the complaint with respect to the energy entities.

■■■ Although the allegations are not essential to the sufficiency of the complaint, there are a number of instances in which plaintiff claims that specific statements or mailings were fraudulent. In those cases, Rule 9(b) requires that the complaint allege the essential "when, what, why and to whom"—when and to whom the statement was made, what it contained, and why it was false or misleading—with particularity. *Luce v. Edelstein,* 802 F.2d 49, 55 (2d Cir. 1986); *Sendar Co., Inc. v. Megawave Inc.,* 705 F.Supp. 159 (S.D.N.Y.1989). This requirement is not complied with in some cases, for example, claims that a form K–1 was fraudulent and that Nick forged investors' signatures on an unknown number of unspecified documents.

■■■ Finally, we come to the question whether Rule 9(b) requires that mailings and wire communications relied upon as jurisdictional elements of the predicate acts, but which are not themselves said to have been fraudulent, be alleged with particularity. We think not. For one thing, we do not regard mailings in furtherance of the scheme, but which are not themselves false or misleading, as "averments of fraud" within the language of Rule 9(b). For another, it is difficult to see any useful purpose in requiring that a RICO complaint specifically allege each mailing in furtherance of a complex commercial scheme, at least where, as here, the complaint alleges that numerous mailings of particular kinds were made in furtherance of the scheme. Once the plaintiff alleges with particularity the circumstances constituting the fraudulent scheme, neither the reputational interests nor the notice function served by Rule 9(b)[2] would be advanced in any material way by insisting that a complaint contain a list of letters or telephone calls. *See Amalgamated Bank of New York v. Marsh,* 823

---

1. The wire fraud statute, 18 U.S.C. § 1343, is similar in all respects material to the present discussion. *See, e.g., Carpenter v. United States,* 484 U.S. 19, 25 n. 6, 108 S.Ct. 316, 320 n. 6, 98 L.Ed.2d 275 (1987). Accordingly, we speak only of mail fraud in the balance of this memorandum, although in doing so we refer to both mail and wire fraud.

2. *See* 5 Charles A. Wright & Arthur R. Miller, Federal Practice and Procedure § 1296; *DiVittorio v. Equidyne Extractive Indus.,* 822 F.2d 1242, 1247 (2d Cir.1987).

F.Supp. 209 (S.D.N.Y.1993); *Center Cadillac v. Bank Leumi Trust Co.*, 808 F.Supp. 213 (S.D.N.Y.1992); *Landy v. Mitchell Petroleum Technology Corp.*, 734 F.Supp. 608 (S.D.N.Y.1990).

■ The foregoing discussion demonstrates the lack of merit in defendants' contention that the allegations against Mrs. Nick fail to comply with Rule 9(b). The complaint alleges that money from certain of the Nick investment vehicles was improperly invested in day care centers owned by Mr. and Mrs. Nick, who allegedly also skimmed cash from the day care centers to the disadvantage of investors. (Cpt ¶¶ 41–46) They contend that the complaint against Mrs. Nick should be dismissed because "[t]he *only* allegation concerning use of the mails or wires specifically addressing Sharon Nick is" that she used the mails and wires to arrange for the purchase of one of the day care centers. (Def.Br. 15) (original emphasis) They ignore, however, the fact that Mrs. Nick may have committed mail fraud even if she never used the mails herself. The offense consists of the foreseeable use of the mails by *anyone* in furtherance of a scheme to which Mrs. Nick was a party. The complaint alleges such a scheme and such mailings with respect to the energy entities.

■ The matter stands differently with regard to the real estate partnerships. Those allegations are entirely conclusory. Indeed, the complaint does not allege even a single mailing or use of the wires in furtherance of the alleged scheme.[3] Count 11, the RICO claim relating to the real estate entities, therefore is patently insufficient.

3. The allegation that funds were mailed *to* these entities, presumably by persons owing money to the entities, that later were converted by Nick (cpt. ¶ 72) does not satisfy the requirement that a jurisdictional mailing be in furtherance of the scheme. *United States v. Porcelli*, 865 F.2d 1352, 1359 (2d Cir.1989).

4. We note that plaintiff need not plead with particularity the facts upon which he bases the allegation of conspiracy, as Rule 9(b) applies only to the averments of fraud, not of conspiracy. *Hecht*, 897 F.2d at 26 n. 4. *Hecht*'s requirement of allegations of a factual basis for a finding of conscious agreement, even if it survives the Su-

*The Substantive RICO Issues*

*Conspiracy.* The complaint alleges that the defendants' misconduct was "achieved by an active conspiracy to violate 18 U.S.C. 1962(a) and (c), resulting in a violation of 18 U.S.C. 1962(d)" and that "[d]efendants knowingly and willfully conspired and agreed to misrepresent and conceal the nature of their fraudulent activities ... through a pattern of racketeering activity ..." (Cpt ¶¶ 64, 91)

[18] In this circuit, a plaintiff alleging a conspiracy to violate RICO must allege an agreement by each defendant to commit at least two predicate acts. *Hecht v. Commerce Clearing House*, 897 F.2d 21, 25 (2d Cir. 1990); *United States v. Ruggiero*, 726 F.2d 913 (2d Cir.1984). Defendants claim that this requirement is not satisfied. Once again, however, the argument is based on a misunderstanding of the offense of mail fraud.

As described above, each defendant would be indictable for mail fraud if he or she knowingly adhered to a fraudulent scheme and one or more mailings foreseeably were made in furtherance of that scheme, irrespective of by whom the mailings were made. *E.g., United States v. Weatherspoon*, 581 F.2d 595, 601 (7th Cir.1978). Each would be separately indictable, moreover, for each mailing so made. As each indictable mail fraud offense is an act of racketeering activity under 18 U.S.C. § 1961, the requirement of an agreement to commit at least two acts of racketeering activity would be satisfied by conscious adherence to a fraudulent scheme pursuant to which two mailings in furtherance of the scheme were foreseeable. We think this requirement is satisfied here as to the energy entities.[4] Since count 11, the

preme Court's decision in *Leatherman v. Tarrant Co. Narcotics Intell. and Coord. Unit*, — U.S. ——, 113 S.Ct. 1160, 122 L.Ed.2d 517 (1993), is satisfied here in light of the allegations that proceeds of the embezzlement charged in the complaint allegedly were used to purchase businesses owned by Mrs. Nick and to provide for certain of her personal expenses and that she personally skimmed cash from certain of the entities.

We note also that the agreement to commit two predicate acts, while necessary in this circuit to state a RICO conspiracy claim, may not alone suffice. Section 1962(d) requires an agreement to violate Section 1962(a), (b) or (c). Section

RICO claim relating to the real estate entities, fails even to allege a jurisdictional mailing in furtherance of the alleged scheme, it fails to state a claim upon which relief may be granted.

*Pattern.* Defendants argue also that the complaint does not adequately allege a pattern of racketeering activity. The basis of the argument, however, is the premise that no acts of mail or wire fraud are alleged with the particularity required by Rule 9(b). Our rejection of that argument requires rejection of the pattern argument with respect to the energy entities. The defendant's point is correct, however, with regard to the real estate partnerships.

■ *Enterprise.* RICO prohibits various activities conducted with respect to an "enterprise," which is a statutory term of art including:

"any individual, partnership, corporation, association, or other legal entity, and any union or group of individuals associated in fact although not a legal entity." 18 U.S.C. § 1961(4).

Many of the activities prohibited, moreover, are those engaged in by persons bearing specified relationships to an enterprise, e.g., persons employed by or associated with the enterprise. 18 U.S.C. § 1962(c). Any principled analysis of a RICO claim therefore must begin from an understanding of what enterprise is alleged. The complaint in this case, however, does not even use the word "enterprise." Hence, while there are any number of partnerships, corporations, and groups thereof that could constitute RICO enterprises, we are left to guess at the enterprise or enterprises that are the subject of plaintiff's RICO claim. Put another way, the complaint does not articulate the plaintiff's RICO theory insofar as it relates to an enterprise or enterprises.

■ *Conley v. Gibson,* 355 U.S. 41, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957), and other cases

stand for the proposition that a complaint to which a special requirement of particularity is not applicable should not be dismissed unless it is clear that the plaintiff can prove no set of facts under its allegations that would entitle the plaintiff to relief. While Rule 9(b) applies to the fraud allegations in this complaint, we do not regard identification of the RICO enterprise as such an allegation. This view is supported by *Hecht*'s holding that an allegation of conspiracy in a RICO claim is not subject to Rule 9(b) because it is not an averment of fraud. 897 F.2d at 26 n. 4. Hence, we find nothing in Rule 9(b) that requires a RICO plaintiff to plead specifically the identity of the enterprise or enterprises relied upon at least where, as here, the existence of entities capable of being the RICO enterprises is alleged and the allegations would permit proof that the defendants acted or conspired to act in a prohibited manner with respect to them. *United States v. District Council of New York City,* 778 F.Supp. 738 (S.D.N.Y.1991); *United States v. International Brotherhood of Teamsters,* 708 F.Supp. 1388, 1396 (S.D.N.Y.1989); *but see Plount v. American Home Insurance,* 668 F.Supp. 204 (S.D.N.Y. 1987); *Philan Insurance Ltd., v. Frank B. Hall & Co., Inc.,* 712 F.Supp. 339 (S.D.N.Y. 1989).

That is not to say that plaintiff is to be congratulated on this diffuse and uninformative pleading. One might well conclude that the failure to elucidate the enterprise or enterprises fails to comply with the requirement in Rule 8 that the complaint contain a short and plain statement of plaintiff's claim. But we need not decide that issue here. As the complaint is being dismissed on other grounds with leave to replead, we will exercise the Court's undoubted power to require that any amended complaint remedy this problem.

1962(c) proscribes the conduct, or participation in the conduct, of the affairs of an enterprise through a pattern of racketeering activity. Thus, a claim of conspiracy to violate Section 1962(c) would seem to require not only an agreement to commit two predicate acts, but an agreement that the affairs of the enterprise be conducted

through the requisite pattern, thus importing the relationship and continuity aspects of *H.J., Inc., v. Northwestern Bell Tel. Co.,* 492 U.S. 229, 109 S.Ct. 2893, 106 L.Ed.2d 195 (1989). *See, e.g., Polycast Technology Corp. v. Uniroyal, Inc.,* 792 F.Supp. 244, 267–68 (S.D.N.Y.1992).

### Plaintiff's Request for Interim Equitable Relief

Plaintiff seeks both to enjoin Nick from managing the affairs of the twenty five entities mentioned in the complaint and to have a receiver appointed to manage the Nick-controlled entities, in each case *pendent lite.* Plaintiff argues that Nick has embezzled and, in some circumstances, sold partnership and corporate assets without the allegedly required authorization of other investors. He therefore asserts that Nick is likely to do so in the future and that the Court should use its equitable powers to prevent this from occurring.

■ Plaintiff alleges that he is an investor in Ajax Energy Partners ("Ajax Energy") and Ajax Island Petroleum, Inc. ("Ajax Island"). He does not claim an interest in any of the twenty three other entities with respect to which he seeks relief. He has no standing to seek either injunctive relief or the appointment of a receiver as to entities in which he does not even claim an interest.[5] The fact that he purports to sue on behalf of a class consisting of all investors in the twenty-five entities mentioned in the complaint adds nothing. *Allee v. Medrano,* 416 U.S. 802, 829, 94 S.Ct. 2191, 2207, 40 L.Ed.2d 566 (1974) (Burger, J., concurring in part and dissenting in part) (plaintiff cannot sue for harm he has not suffered, and cannot use class action to acquire standing via the back door) *citing O'Shea v. Littleton,* 414 U.S. 488, 494, 94 S.Ct. 669, 675, 38 L.Ed.2d 674 (1974) and *Bailey v. Patterson,* 369 U.S. 31, 32–33, 82 S.Ct. 549, 550–551, 7 L.Ed.2d 512 (1962).

■ Plaintiff's motions for equitable relief with respect to Ajax Island and Ajax Energy are governed by N.Y. CPLR § 6401 (McKinney 1986), *supra note* 5, and FED.

R.CIV.P. 64 and 65. Both require that plaintiff show a threat of irreparable injury if the relief is not granted. *Jackson Dairy, Inc. v. H.P. Hood & Sons, Inc.,* 596 F.2d 70, 72 (2d Cir.1979) (preliminary injunction); *S.Z.B. Corp. v. Ruth,* 14 A.D.2d 678, 219 N.Y.S.2d 889 (1st Dept.1961) (temporary receiver). Irreparable injury is harm that cannot be compensated adequately by money damages. *Holford v. Cherokee,* 864 F.Supp. 364, 371 (S.D.N.Y.1994); *Greenberg v. Greenberg,* 104 N.Y.S.2d 726 (Sup.Ct. Kings County 1951) (no temporary receiver in action for money damages). For issuance of a preliminary injunction, irreparable injury absent the injunction must be "likely." *Jackson Dairy,* 596 F.2d at 72. The appointment of a temporary receiver requires a clear showing that the appointment is "necessary" to prevent the irreparable injury. *Groh v. Halloran,* 86 A.D.2d 30, 448 N.Y.S.2d 680 (1st Dept.1982). In addition, the movant for a preliminary injunction must demonstrate a likelihood of success on the merits of the case or both the existence of substantial issues going to the merits of the litigation and a balance of equities decidedly in the movant's favor before the Court will issue an injunction. *Jackson Dairy,* 596 F.2d at 72.

Ajax Energy wound up it affairs no later than April 1993, and the remaining assets were distributed to the limited partners. Hence, there is no threat of irreparable injury to Ajax Energy. The requests for equitable relief with respect to it therefore are denied.

Plaintiff makes two claims as to Ajax Island, the other of the two entities in which he asserts an interest. The Caputi affidavit contends that Nick (i) improperly diverted monthly payments of $3,250 from oil wells

---

**5.** Plaintiff's motion for a temporary receiver is governed by FED.R.CIV.P. 64, which in turn requires application of Article 64 of the New York Civil Practice Law and Rules. Section 6401(a) provides in relevant part:

"Upon motion of a person having an apparent interest in property which is the subject of an action in the supreme or a county court, a temporary receiver of property may be appointed ... where there is a danger that the property will be removed from the state, or lost, materially injured or destroyed." N.Y. CPLR § 6401(a) (McKinney 1980).

A temporary receivership is a creature of equity the object of which is to preserve property that is the subject of an action until the court determines who is entitled to it. *E.H.A. Successor Corp. v. Vogel,* 21 A.D.2d 176, 249 N.Y.S.2d 568 (1st Dept.1964); DAVID D. SIEGEL, NEW YORK PRACTICE § 332 (2d ed. 1991). In consequence, the remedy is available, as the statute says, only to one who has "an apparent interest" in the property for which a receiver is sought. Plaintiff does not have an apparent interest in any entities other than Ajax Energy and Ajax Island.

owned by Ajax Island into accounts used to pay Nick's office expenses and (ii) sold certain of its drilling properties without authority from its investors. (*Id.* ¶¶ 42–43) Nick does not respond to the claim of unauthorized asset sales. He maintains that the $3,250 monthly payments constituted a portion of the 5.5% of the revenues from the oil wells to which he was entitled as administrator of Ajax Island. (Nick Aff. ¶ 50)

■ At root, plaintiff's (or, perhaps more properly, Ajax Island's) claim with respect to the diversion of the $3,250 payments from the oil wells is a claim for money damages against Nick. There is no evidence that a judgment against Nick for damages, if plaintiff or Ajax is entitled to one, would not be an adequate remedy. Thus plaintiff has failed to show a threat of irreparable harm in the sense required with respect to these payments, and his request for equitable relief on this ground is denied.

■ Plaintiff's claim that Nick threatens to sell Ajax Island's oil wells is more difficult. Equity presumes that real property such as the oil wells is unique. Loss of such property is therefore regarded as an irreparable injury. Plaintiff, however, has failed to show either that the merit of his claim justifies issuance of a preliminary injunction or that the threatened harm is sufficiently likely to warrant either an injunction or a receiver.

■ As to the merits of the claim, plaintiff has made only a conclusory allegation that some of Ajax Island's oil wells were sold without investor approval. Ajax Island is a New York corporation. The business of a corporation is managed by a board of directors, not the shareholders. N.Y.Bus. Corp.L. § 701 (McKinney 1988). Although Nick provides no evidence that the board approved the sales, the burden here is on the plaintiff, who has not shown the contrary. *See Jackson Dairy,* 596 F.2d at 72. Shareholder approval for a sale of assets normally is required only when (a) such approval is required in the certificate of incorporation or the bylaws, or (b) when the sale constitutes all or substantially all of the corporate assets. *Id.* § 909; *see id.* § 701. Plaintiff points to nothing in the certificate or the bylaws that would have required investor approval for such sales. Moreover, there is no basis on this record for concluding that the alleged sale of fifteen of sixty eight oil wells constituted the sale of all or substantially all of Ajax Island's corporate assets. In consequence, plaintiff's bare allegation does not rise to a showing of either a likelihood of success on, or a substantial issue going to, the merits of the claim of unauthorized sales.

Even if plaintiff had made a more substantial showing on the merits, plaintiff has presented no direct evidence that Nick is threatening to sell any other assets. Instead, *plaintiff makes a bare assertion that future sales are likely based on Nick's allegedly improper prior actions.*

Taking all of these factors together, plaintiff's requests for a preliminary injunction and appointment of a temporary receiver with respect to Ajax Island are denied.

### Conclusion

Counts 4, 5, 10 and 11, which purport to state claims for common law fraud and under RICO, are dismissed pursuant to FED. R.CIV.P. 9(b). Count 11, the RICO count pertaining to the real estate partnerships, is dismissed on the additional ground that it fails to state a claim upon which relief may be granted. The dismissal is with leave to replead provided that plaintiff files an amended complaint in compliance with the further provisions hereof within twenty-one days. The motion to dismiss the other counts, all of which are pendent State claims, is denied without prejudice to renewal in the event plaintiff fails to amend or the amended federal claims are dismissed prior to trial.

The motions for appointment of a temporary receiver and for a preliminary injunction are denied.

Any amended complaint shall specifically:

1. Identify the alleged enterprise or enterprises which are the subject of any RICO claim.

2. Identify the provision or provisions of RICO alleged to have been violated by each defendant.

3. If any violation of 18 U.S.C. §§ 1962(a), (b) or (c) is alleged, describe the

564

acts of racketeering activity alleged to constitute any pattern of racketeering activity and set forth the basis for the assertion that the alleged acts of racketeering activity form a pattern.

4. If any claim is made of a violation or conspiracy to violate 18 U.S.C. § 1962(a), indicate who received or was to receive income derived from any alleged pattern of racketeering activity and describe the alleged uses or intended uses of that income.

In addition, the Court notes that the gravamen of the complaint appears to be that the defendants embezzled money from or otherwise injured various partnerships and corporations allegedly controlled by them. In framing any amended complaint, plaintiff should consider whether he has standing to bring such claims individually or whether the claims may be asserted only derivatively on behalf of each entity allegedly injured.[6] In the event any derivative claims are included, the amended complaint shall comply with the provisions of FED.R.CIV.P. 23.1.

SO ORDERED.

---

**6.** *See generally, e.g., Lewis v. S.L. & E., Inc.,* 629 F.2d 764, 768 n. 10 (2d Cir.1980); *Blum v. Whitney,* 185 N.Y. 232, 242, 77 N.E. 1159 (1906); *Quatrochi v. Citibank,* N.A., —— A.D.2d ——, 618 N.Y.S.2d 820 (1st Dept.1994), *New Castle Siding, Inc. v. Wolfson,* 97 A.D.2d 501, 468 N.Y.S.2d 20 (2d Dept.1983), *aff'd,* 63 N.Y.2d 782, 481 N.Y.S.2d 70, 470 N.E.2d 868 (1984); *Katell v. Morgan Stanley Group,* 1993 WL 10871, *3–*4 (Del.Ch.1993); *cf.* N.Y.Bus.Corp.L. § 626 (McKinney 1986); N.Y.Partnership L. § 121–1002 (McKinney Supp.1988).