**AMERICAN BUYING INSURANCE
SERVICES, INC., et al.,
Plaintiffs,**

v.

**S. KORNREICH & SONS, INC.,
et al., Defendants.**

**No. 95 Civ. 1676 (LAK).**

United States District Court,
S.D. New York.

Sept. 30, 1996.

Jeffrey R. Mann, Rubin Baum Levin Constant & Friedman, New York City, for Plaintiffs.

Andrew C. Jacobson, Michael R. Koblenz and Mitchell S. Cohen, Mound Cotton & Wollan, New York City, for Defendants.

## MEMORANDUM OPINION

KAPLAN, District Judge.

This action asserts claims under the Racketeer Influenced and Corrupt Organizations Act ("RICO"), 18 U.S.C. § 1961 et seq., and for common law fraud, breach of contract, negligent misrepresentation, and conversion. The underlying dispute arises from the creation and operation of an insurance buying program proposed by plaintiffs and to be operated by Kornreich Insurance Services ("KIS"), which is alleged to have "held itself out as a collective entity composed of Kornreich Inc., S.K. Int'l., Kornreich N.J., KIS Fla., Kornreich Life, K.B.C., API and Risk." (Am.Cpt. ¶ 12) All of the above named constituent parts of KIS are defendants in this action, in addition to Preferred Concepts Inc., NIA/Kornreich LLC, Steven L. Grossberg, Matthew R. Kornreich, Morton A. Kornreich, William D. Kornreich, Stuart Farber, Phillip J. Miller, and ten "John Does." KIS "is not a corporation, partnership or other entity recognized as such by any state or other governmental agency" (Am.Ctp. ¶ 5) and is not a defendant in this action.

The defendants move to dismiss the complaint under FED.R.CIV.P. 12(b)(6) on the ground that plaintiffs have failed to state a claim, and under FED.R.CIV.P. 9(b) on the ground that the RICO predicate acts of mail and wire fraud and the common law fraud cause of action are not pleaded with sufficient particularity.

### Facts

Robert Sheridan, Marc Sheridan and Beth Sheridan Kurensky, the controlling shareholders of the plaintiff corporations, are in the real estate business and had used KIS as their insurance brokerage to obtain coverage on their individual properties. In December 1990, they contacted Steven L. Grossberg and Morton A. Kornreich of KIS in order to discuss the formation of a real estate insurance buying group, a group that would package individual property owners into a group for insurance purchasing purposes in order to obtain lower premiums. The idea was that KIS would operate the group.

Beginning on July 1, 1991, KIS placed insurance for the Sheridans and other property owners that KIS served by presenting them as a group to insurance carriers. The parties agreed orally, and in a written agree-

ment, as to their respective duties they would undertake in operating the buying group, which was termed the "American Buying Property and Casualty Program." In the first year of operation, the program had approximately 30 customers, and KIS—directly and through API, The Underwriting Facility ("TUF") (a Kornreich entity), and Preferred Concepts, Inc. ("PCI")—placed a variety of insurance for the program members.

The agreement provided that plaintiffs were to receive 10 percent of the premiums paid to KIS by customers who were new to the program, and 5 percent of premiums for existing KIS customers who entered the program. In addition, plaintiffs were to receive fees for any new customers that they referred to the program. Defendants were to receive 15 percent of all premiums paid by program participants and, in addition to running all aspects of the program and placing all of the program's insurance through API, KIS represented that it would endeavor to find new program members and admit all qualified customers to the program. KIS further represented that it would provide plaintiffs with regular reports that reflected all new business, premiums paid by clients, the commissions accrued to the accounts of KIS and the plaintiffs, and numerous other details of the program's operation. The plaintiffs' only obligation under the contract was to try diligently to find new participants for the program.

The payment of commissions to plaintiffs raised an issue under state insurance laws. Grossberg informed them that only licensed brokers could receive commissions out of the premiums paid to the program without disclosing these commissions to customers. He told plaintiffs that any payments made to plaintiffs for work in states in which plaintiffs were not licensed would have to be made as fees and disclosed to the customers. However, plaintiffs never procured any business from states in which they were not licensed.

Problems with the program began in the fall of 1992, when KIS had trouble gaining renewal for some of the program's coverage, difficulty that continued for the remaining time the program was in operation. Plaintiffs claim that at least one of the instances in which KIS could not "roll over" the policies was caused by an insurer's animus toward KIS due to improper actions it had taken in relation to another matter.

Plaintiffs claim that program members were forced to pay higher premiums than they would have paid if KIS had renewed the policies in a timely manner. KIS informed plaintiffs that, after May 13, 1994, the policies in the program would have to be placed on an individual basis in order to obtain coverage and that no fees would be paid to plaintiffs for these policies. Plaintiffs argue that this was merely a pretext to avoid paying them their fees and that KIS and its subsidiaries on numerous occasions placed program participant insurance individually in order to deprive plaintiffs of their fees.

Plaintiffs maintain that defendants sought to defraud them throughout the life of the program and even before the signing of the contract. They claim that customers of TUF, a brokerage unit of KIS, were included in the program but that KIS failed to pay plaintiffs the agreed fees on that business. In addition, plaintiffs claim that KIS prepared and mailed them statements which falsely reported the amount of fees due plaintiffs under the pretext of giving the customers a fee discount to secure new business. Furthermore, it is claimed that KIS failed to pay the full fees owing to plaintiffs from customers of PCI.

Essentially, plaintiffs accuse defendants of not accurately reporting the status of the program to them in the required status reports and of failing to deliver copies of policies to customers, in violation of the contract. Plaintiffs claim that defendants did this in order to cover up the fact that they were not: (1) paying plaintiffs the fees that plaintiffs were entitled to, (2) including in the program all customers that should have been included; (3) disclosing plaintiffs' fees to customers; and (4) placing all of the coverage that program participants had paid premiums for, while representing that they had placed such coverage.

### Discussion

*Standing*

In order to bring a civil RICO claim, a plaintiff must allege: (1) a violation of

Section 1962; (2) an injury to business or property; and (3) causation of the injury by the violation. *Hecht v. Commerce Clearing House, Inc.*, 897 F.2d 21, 23 (2d Cir.1990). Defendants argue that plaintiffs cannot demonstrate injury to their business or property, and so their claim must be dismissed. The Court disagrees.

■ Defendants claim that the agreement between KIS and plaintiff American Buying Corp. ("AB") was illegal under the New York Insurance Law, so that any claims for damages that AB may have against KIS under that contract would be unenforceable. Absent an enforceable claim for damages, defendants argue, plaintiffs cannot satisfy the injury requirement.

Without ruling on the legality of the contract under New York law, the Court rejects defendants' claim that illegality of the contract necessarily would preclude plaintiffs from proving damages. Under *Conley v. Gibson*, 355 U.S. 41, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957), a complaint should not be dismissed unless it is clear that the plaintiff could prove no set of facts that would entitle it to relief. Even if the contract in this case were held to violate New York law, there are a number of reasons why plaintiffs nevertheless might be entitled to damages.

Defendants argue that plaintiffs are entitled to no benefit from the contract, and therefore should have no claim for damages. Plaintiffs' RICO claims, however, sound in tort, not contract. The predicate acts that plaintiffs allege are mail and wire fraud. The damages resulting from these causes of action are not measured exclusively, if at all, by the benefit of the bargain method. *See*

W. PAGE KEETON, ET AL., PROSSER AND KEETON ON TORTS § 110, at 767–68 (5th ed. 1984) (discussing plaintiffs' damages as "out-of-pocket," including special and other damages, which are different from "loss-of-bargain" damages, which defendant in this case assumes are the only damages available). Plaintiffs may be able to prove out-of-pocket losses distinct from the fees that they were to receive under the contract.[1] In consequence, plaintiffs may be entitled to damages measured in a manner that would not give them the benefit of an allegedly illegal bargain. The fact that the plaintiffs might have been defrauded out of insurance coverage when KIS falsely reported that it had placed policies in 1991–1994 could give rise to a claim for damages for fraud separate from the fees due under the contract. (Am.Cpt. ¶ 55j) Likewise, plaintiffs allege that the program lost insurers and paid higher premiums than were necessary due to KIS' fraudulent acts. (Am.Cpt. ¶ 39) Such a claim would give rise to damages apart from the fees owed under the contract. Thus the complaint alleges numerous factual situations which, if proven, would entitle the plaintiffs to recovery under their tort claims absent the contract.

Defendants' claim is flawed also because they overstate the inflexibility of the rule prohibiting enforcement of illegal contracts. While it is true that courts generally will not enforce an illegal contract, there are myriad exceptions to this principle, of which plaintiffs might prove a number.[2]

■ For example, courts will allow a plaintiff to recover damages on an unenforceable contract if the plaintiff was excusably igno-

---

1. The complaint seeks to recover economic losses suffered as a consequence of defendants' actions. (Am.Cpt. ¶ 79) This pleading is reasonably construed as a claim for more than benefit-of-the-bargain damages and might encompass out-of-pocket and special damages as well.

2. For similar reasons, defendants' motion to dismiss the plaintiffs' breach of contract claim is denied. As explained in the text, there are a number of possible factual scenarios pled under which plaintiffs could prevail on their breach of contract claim, even if the contract violated New York law. Furthermore, defendants' motion to dismiss as to plaintiffs American Buying Real Estate Group and American Buying Insurance

Services is denied. While it is true that these plaintiffs were not parties to the contract, plaintiffs' pleadings reasonably could be interpreted to raise a third-party beneficiary claim in that plaintiffs claim that American Buying Corp. was acting on behalf of the other entities and that the defendants had knowledge that multiple parties would have obligations under the contract. (Am. Cpt. ¶ 27) Finally, these two plaintiffs were parties to a later contract with defendants, as discussed more fully in the text. We find that this raises an issue of defendants' liability on the contract to all three plaintiffs that cannot properly be dismissed at this stage.

rant, and the defendant was not, of the facts that made the agreement unenforceable. RESTATEMENT (SECOND) OF CONTRACTS § 180.¹ Plaintiffs allege that the fee-splitting arrangement was suggested by KIS as a way to circumvent the rule prohibiting non-licensed brokers from receiving commissions. If this is true, it would suggest that defendants knew of the agreement's possible illegality. Moreover, as licensed insurance brokers in the State of New York, defendants should have known the laws applying to brokers. These facts could lead a jury to conclude that defendants knew about the prohibition on such contracts, which might render such a contract enforceable, depending upon the extent of plaintiffs' knowledge. (Am.Cpt. ¶ 34)

■ Also, while courts generally do not grant restitution under agreements that are unenforceable due to illegality, courts will award damages in *quantum meruit* if it is found that the two parties are not *in pari delicto*, as when the plaintiff is the victim of misrepresentation by the defendant. II E. ALLAN FARNSWORTH, FARNSWORTH ON CONTRACTS § 5.9, at 77 (1990). Plaintiffs have alleged that defendants suggested the structure of the fee arrangement in order to avoid the problem of splitting commissions. It might be found that defendants misrepresented their reason for this request and meant to defraud plaintiff into signing an unenforceable contract. (Am.Cpt. ¶ 34) Plaintiffs claim also that during the life of the contract they obtained licenses to deal in insurance in some states. If those licenses made them eligible to receive commissions under New York law, then they might recover restitution for the fees accrued after they obtained their licenses. *See McEvoy v. American Lumbermen's Mut. Casualty Co. of Ill.*, 51 N.Y.S.2d 306, 308 (1944), *aff'd*, 269 App.Div. 857, 56

N.Y.S.2d 527 (2d Dep't 1945), *aff'd*, 295 N.Y. 906, 68 N.E.2d 25 (1946).

■ Defendants argue also that two of the plaintiffs, American Buying Real Estate Group and American Buying Insurance Co., lack standing because they were not parties to the contract and so did not sustain injury due to defendants' conduct. Once again, defendants ascribe too much significance to the contract as a source of damages. In reinstating a RICO claim on behalf of a group of allegedly defrauded parties that were not parties to the contract underlying the fraud, the Second Circuit stated:

> "Plaintiffs' lack of a contractual right ... is not of controlling significance. * * * [T]he existence of such contractual rights does not foreclose plaintiffs' RICO fraud claims, nor does it immunize defendants from the consequences of a pattern of direct misrepresentation to plaintiffs." *Standardbred Owners Association v. Roosevelt Raceway Associates*, 985 F.2d 102, 105 (2d Cir.1993).

Much as the plaintiffs in the *Standardbred* case were deceived by ongoing representations that their raceway would be kept open, plaintiffs allegedly were deceived by representations that they had insurance coverage which had not actually been placed. Such representations could give rise to fraud damages and establish the requisite injury for RICO standing.[3]

Defendants' motion to dismiss on the grounds that plaintiffs lack standing is denied in all respects.

*Enterprise*

RICO prohibits various activities conducted with respect to an "enterprise," which is defined as "any individual, partnership, corporation, association, or other legal entity, and any union or group of individuals associ-

---

**3.** In assessing defendants' claim that American Buying Insurance Services and American Buying Real Estate Group had no rights under the contract, it is significant that there was an agreement signed on February 11, 1994 between plaintiffs American Buying Insurance Services, American Buying Real Estate Group, and defendants KIS and API which modified the fee agreement. (Am.Cpt. ¶ 46) If, as defendants allege, these plaintiffs sustained no injury from defendants' allegedly fraudulent acts, there would have been no reason to modify the fee agreement between the plaintiffs and defendants in a contract that included these entities. These entities must have had an interest in the program, modified by this contract, which could support a claim of injury arising from defendants' conduct. Such injury would be direct, and not derivative, of American Buying's injuries in that the lack of insurance on their real estate holdings would be an injury entirely separate from any unpaid fees.

ated in fact although not a legal entity." 18 U.S.C. § 1961(4). A RICO plaintiff must adequately allege an enterprise in order to state a claim under either Section 1962(b) or (c). Plaintiffs in this case first claim that the enterprise may be "[a]ny one of the corporate defendants Kornreich Inc., S.K. Int'l., Kornreich N.J., KIS Fla., Kornreich Life, KBC, API, Risk, and PCI." (Am.Cpt. ¶ 63a) Alternatively, they claim that all of the corporate defendants (aside from PCI) acting as KIS, together with PCI, are an association-in-fact under the definition of a RICO enterprise. Finally, plaintiffs allege that they and the corporate defendants, acting together in the operation of the insurance buying program, were an association-in-fact enterprise.

█ Defendants argue that the first two of these groups are not proper RICO enterprises because "[t]hese ... alleged enterprises are entirely composed of defendants. Courts in this jurisdiction have repeatedly held that the RICO person (i.e., a defendant) cannot be the same entity as the RICO enterprise." (Def.Mem. at 24) Defendants' assertion is incorrect.

The Second Circuit has held that a person alleged to have conducted the affairs of the RICO enterprise and the RICO enterprise itself must be distinct. *Bennett v. United States Trust Co.,* 770 F.2d 308, 315 (2d Cir. 1985), *cert. denied,* 474 U.S. 1058, 106 S.Ct. 800, 88 L.Ed.2d 776 (1986). This principle is most often cited when a plaintiff claims that a single entity is both the RICO "person" and "enterprise." This may be the genesis of defendants' misunderstanding regarding the ability of a plaintiff to allege that a defendant is also part of an enterprise. While a single defendant in an action which names no co-defendants may not be alleged to be the RICO enterprise (since it would have to be both the RICO "person" and "enterprise"), "a single entity [may] be both the RICO 'person' and one of a number of *members* of the RICO 'enterprise'" when more than one entity is charged. *Cullen v. Margiotta,* 811 F.2d 698, 729–30 (2d Cir.) (emphasis added), *cert. denied sub nom. Nassau County Republican Committee v. Cullen,* 483 U.S. 1021, 107 S.Ct. 3266, 97 L.Ed.2d 764 (1987). Since a RICO "person"

must be a defendant in an action, it is clear that a defendant may be a *part of* a RICO "enterprise." *Jacobson v. Cooper,* 882 F.2d 717, 720 (2d Cir.1989).

Defendants argue also that the first proposed enterprise, that consisting of any one of the defendant corporations, is not proper because one entity is alleged to be both the enterprise and a defendant. Plaintiffs correctly explain that they are pleading in the alternative as allowed under FED.R.CIV.P. 8(a), and that any single corporate defendant that was found to be the only constituent of the enterprise would not be held liable as a RICO person. They note that "those defendants found to be enterprises for the purposes of section 1962(c) will not be liable under that section, although the persons managing and operating them will be." (Pl. Mem. at 25) The enterprises alleged by plaintiffs evidence the distinctiveness mandated by this Circuit.

█ Defendants next argue that the enterprise pleadings do not have the particularity required of RICO fraud pleadings. It is far from settled law, however, that the allegations of an "enterprise" and "control" thereof must be made with particularity. Though the court in *Plount v. American Home Assurance Co.,* 668 F.Supp. 204, 206 (S.D.N.Y. 1987), ruled that the elements of RICO must be pled with specificity, the *Plount* court extrapolated its holding from language in *Beck v. Manufacturers Hanover Trust Co.,* 820 F.2d 46 (2d Cir.1987), *cert. denied,* 484 U.S. 1005, 108 S.Ct. 698, 98 L.Ed.2d 650 (1987), *overruled on other grounds, U.S. v. Indelicato,* 865 F.2d 1370 (2d Cir.1989) (in banc), and stated that "[t]he rule of *Beck* thus presupposes that the elements of RICO must be pled with specificity." *Plount,* 668 F.Supp. at 206. This Court finds no such supposition in the *Beck* case. In its discussion of the adequacy of the enterprise allegations, the *Beck* did not mention the word "particularity." The discussion focused on the fact that an enterprise must be alleged for the continuity requirement to be sufficiently pled. We find no support in *Beck* for the contention that a particularity requirement should apply to the pleading of a RICO "enterprise." In fact, this Court has held

that "[w]hile Rule 9(b) applies to the fraud allegations in this complaint, we do not regard the identification of the RICO enterprise as such an allegation." *Spira v. Nick,* 876 F.Supp. 553, 561 (S.D.N.Y.1995). The Court sees no reason to deviate from this view today. Plaintiffs have alleged sufficiently a RICO enterprise.

Finally, defendants argue that the complaint fails to allege that they had the requisite role in the alleged violation. A RICO plaintiff under Section 1962(c) must demonstrate that the defendants "participate[d], directly or indirectly in conduct of [the] enterprise's affairs." The Supreme Court has construed this to mean that "one must have some part in directing those affairs." *Reves v. Ernst & Young,* 507 U.S. 170, 179, 113 S.Ct. 1163, 1170, 122 L.Ed.2d 525 (1993). This "operation or management" test can be satisfied by the actions of " 'any person employed by or associated with [the] enterprise.' " *Reves,* at 184, 113 S.Ct. at 1173 (quoting Brief for Petitioner). Since this component of the RICO claim need not be stated with particularity, it is enough to survive a motion to dismiss if the complaint would permit proof of facts that would support the claim. The Court holds that plaintiffs have satisfied this loose standard.

*Adequacy of Conspiracy Allegations*

■ Section 1962(d) establishes liability for a conspiracy to violate Section 1962(a), (b), or (c). Plaintiffs argue that defendants have violated Section 1962(d) by conspiring to violate Section 1962(b) and (c). Defendants argue for dismissal of these claims due to plaintiffs' failure adequately to plead a RICO conspiracy.

It is well settled in this Circuit that the heightened pleading requirements of FED. R.CIV.P. 9(b) do not apply to the averment of conspiracy under Section 1962(d). *Hecht v. Commerce Clearing House, Inc.,* 897 F.2d 21, 26 n. 4 (2d Cir.1990). The *Hecht* case establishes that the plaintiff merely must "allege facts implying an agreement involving each of the defendants to commit at least two predicate acts." *Hecht,* 897 F.2d at 25; *accord, Spira v. Nick,* 876 F.Supp. 553, 561 n. 4 (S.D.N.Y.1995) (requiring, in a claim of conspiracy to violate Section 1962(c), agreement

to conduct affairs of enterprise through requisite pattern). So, in order to survive a motion for dismissal, plaintiffs complaint must allege facts suggesting both an agreement to conduct the affairs of the enterprise through a pattern of racketeering activity and an agreement on the part of each defendant to commit at least two predicate acts.

Plaintiffs allege that:

> "each of the corporate defendants ... knowingly and intentionally agreed and conspired to commit ... at least two of the predicate acts ... and they did so with the knowledge and intent that such acts were in furtherance of the foregoing pattern of racketeering." (Am.Cpt. ¶ 84)

Plaintiffs thus have alleged an agreement by each of the defendants to commit at least two predicate acts, and have further alleged that defendants adhered to the pattern of racketeering activity. Plaintiffs have alleged enough to survive a motion to dismiss.

*Fraud Allegations: Particularity Requirement*

FED.R.CIV.P. 9(b) requires that "[i]n all averments of fraud ... the circumstances constituting fraud ... shall be stated with particularity." The particularity requirement has been held to require the complaint to allege "the essential 'when, what, why, and to whom'—when and to whom the statement was made, what it contained, and why it was false and misleading—with particularity." *Spira v. Nick,* 876 F.Supp., at 559 (quoting *Luce v. Edelstein,* 802 F.2d 49, 55 (2d Cir. 1986)).

*The Corporate Defendants*

■ The complaint is inadequate as to the corporate defendants that allegedly make up KIS. It is practically devoid of references to these entities, and it specifically alleges no actions by any of the individual corporations either in defrauding the plaintiffs or in participating in or approving any of the predicate acts. While the complaint explicates the transactions giving rise to plaintiffs' claims for mail and wire fraud in detail, the individual corporate defendants are nowhere tied to these acts. In order to state a fraud-based RICO claim, not only must the plaintiffs

state the particular facts giving rise to the claim of fraud, they must also, for each defendant, allege facts tending to show with particularity that the defendant committed at least two predicate acts. The blanket allegations against all defendants that the plaintiffs employ are not sufficient. *Beauford v. Helmsley,* 740 F.Supp. 201, 213 (S.D.N.Y. 1990); *Natowitz v. Mehlman,* 542 F.Supp. 674, 676 (S.D.N.Y.1982); *Center Cadillac, Inc. v. Bank Leumi Trust Co.,* 808 F.Supp. 213, 230 (S.D.N.Y.1992).

Plaintiffs are not saved by their allegations as to KIS. They allege that KIS has held itself out as a collective entity comprised of all the corporate defendants save PCI and NIA/Kornreich LLC.[4] Although it is "not a corporation, partnership, or other entity recognized as such by any state or governmental agency," KIS was the only Kornreich entity under the parties' agreement. (Am. Cpt. ¶ 12) Plaintiff states that:

> "In doing business under the name 'Kornreich Insurance Services,' and in entering into business relationships with plaintiffs, no separate duties, obligations or business functions were assigned to or were undertaken by any specific Kornreich Company. Rather, all such business functions, duties and obligations were to be carried out by KIS." (Am.Cpt. ¶ 12)

Though the complaint pleads a great number of facts that could satisfy Rule 9(b) as to KIS, plaintiffs make no legal argument that their allegations regarding KIS should be imputed to the corporate defendants. Accordingly, the complaint is dismissed as to the corporate defendants.

*PCI*

██ Plaintiffs allege that defendant PCI placed insurance directly with AIG to avoid paying plaintiffs the fees that would have accrued under the program. This allegation, coupled with the details of the allegedly fraudulent wires and mailings in furtherance of the fraud, is enough to satisfy Rule 9(b) as to this defendant.

*The Individual Defendants*

██ Defendants attack also the sufficiency of the complaint in so far as it seeks to tie the individual defendants to the alleged RICO violations. The complaint sets out in detail the various acts which are alleged to constitute mail and wire fraud. It alleges that defendant Farber directed PCI to attempt to defraud plaintiffs out of fees by directly placing insurance for program participants instead of going through the program and by paying them only a portion of the fees due them. It alleges that defendant Grossberg misrepresented the reason that KIS customers had to pay higher fees to AIG for renewals and why NAS would not cover the program participants on a group basis. It alleges that defendant Morton A. Kornreich made false representations to plaintiffs regarding KIS' duties under the contract in an effort to induce plaintiffs to enter into an agreement with KIS. These allegations satisfy the requirements of Rule 9(b) as to Messrs. Farber, Grossberg, and Morton A. Kornreich.

██ The conclusion is different as to the other individual defendants. The complaint alleges that defendant Miller directed TUF not to pay plaintiffs fees for program participants whose insurance was placed through TUF. Plaintiffs allege also that the individual defendants William D. Kornreich, and Matthew R. Kornreich approved and knew of many of the specific allegedly fraudulent actions of which plaintiff complains. The allegations against defendants Miller, William D. Kornreich and Matthew R. Kornreich, however, are based solely on information and belief.

The allegations as to these defendants do not satisfy the requirements of Rule 9(b). Allegations of fraud based on information and belief do not satisfy Rule 9(b) unless "the

---

4. NIA/Kornreich LLC is a defendant in this action on the theory of successor liability. It is therefore not necessary that plaintiffs prove fraud with regard to this defendant. To prevail against this defendant, plaintiffs must show that another of the defendants committed a tort, and that NIA/Kornreich LLC is liable under the rules of successor liability. See *infra,* for the Courts' discussion on this issue. The adequacy of the fraud pleadings as to PCI will be discussed also, *infra.*

facts are peculiarly within the knowledge of the defendants, in which case the complaint must allege facts demonstrating the basis for the information and belief." *Spira v. Nick,* 876 F.Supp. at 557 (citing *Schlick v. Penn–Dixie Cement Corp.,* 507 F.2d 374, 379 (2d Cir.1974)). While the facts regarding the alleged participation of these defendants may be said to be peculiarly within the knowledge of the defendants, the complaint does not put forward facts demonstrating plaintiffs' basis for the information and belief, and is therefore insufficient as to these defendants. It is dismissed with respect to defendants Miller, Matthew R. Kornreich and William D. Kornreich.

*Successor Liability*

■ NIA/Kornreich Limited Liability Company is alleged to have acquired all of the assets of one or more of the Kornreich Companies, thus becoming liable on claims against those companies as their successor in interest. Defendants seek to dismiss this claim on the ground that successor liability in a RICO case should be considered only in extraordinary circumstances. The Court rejects defendants' motion.

Defendants base their argument on the holding in *Rodriguez v. Banco Central,* 777 F.Supp. 1043, 1063–64 (D.P.R.1991), *aff'd on other grounds,* 990 F.2d 7 (1st Cir.1993), in which the court refused to find successor liability in a RICO case. However, despite its ultimate ruling, the court carefully examined the factual circumstances and, after a jury trial, held that successor liability was inappropriate in that case.[5]

Although the *Rodriguez* court did not find successor liability, its analysis was not much different from that employed in *R.C.M. Executive Gallery Corp., v. Rols Capital Corp.,* 901 F.Supp. 630, 635 (S.D.N.Y.1995). Judge

Koeltl there noted that "[t]he few courts to confront this issue have held that the principles of successor liability apply to RICO claims."[6] The court explained that although the general (non-RICO) rule holds that no successor liability should attach, there are a number of well established exceptions to this rule, and that these exceptions should apply in RICO claims. This Court agrees.

In general, successor liability will lie when: (1) there is an express or implied agreement to assume the other company's debts and obligations; (2) the transaction was fraudulent; (3) there was a de facto merger or consolidation of the companies; or (4) the purchasing company was a mere continuation of the selling company. *See Freeman v. Complex Computing Co., Inc.,* 931 F.Supp. 1115, 1121–23 (S.D.N.Y.1996); *R.C.M.,* 901 F.Supp. at 635; 15 STEPHAN M. FLANAGAN, ET AL., FLETCHER CYC. CORP. §§ 7122, 7123 (Perm. ed. & Supp.1994). This Court holds that these exceptions apply to RICO claims as well.

Plaintiffs allege that the formation of NIA/Kornreich LLC was a "merger" and that the successor assumed the liabilities of all the companies that it acquired. (Am.Cpt. ¶ 13) Should plaintiff be able to prove these facts, it could prevail on a theory of successor liability, which necessitates denial of defendants' motion to dismiss this claim.

*References to KIS' Dealings With Not–For–Profit Groups*

■ Defendants move under FED. R.CIV.P. 12(f) to strike from the complaint references to KIS' service (through API) to certain not-for-profit organizations. Defendants' main contention is that these claims are irrelevant to the case before this Court. The crux of their argument is that "[t]hese

---

**5.** The *Rodriguez* court put great stock in the fact that the putative successor defendant's agreement to purchase the predecessor explicitly disclaimed liabilities for any assets or liabilities that were not acquired pursuant to that agreement. *Rodriguez,* 777 F.Supp. at 1064. The court noted that "if there is a showing of knowledge, constructive or actual, by the purchaser at the time of the transaction, the equation is altered and liability might lie." *Id.,* at 1065. Plaintiff might be able to prove that NIA did take on all the liabilities of its predecessors, or that the merger

was a fraudulent attempt to avoid paying a claim in this case. Even if we adopted *Rodriguez'* reasoning, we would have to deny the motion.

**6.** Judge Koeltl cited *Continental Grain Co., v. Pullman Standard Inc.,* 690 F.Supp. 628 (N.D.Ill. 1988); *Ghouth v. Conticommodity Servs., Inc.,* 642 F.Supp. 1325, 1328 (N.D.Ill.1986); and *Rodriguez,* which does recognize that successor liability can attach in RICO claims, but limits it to certain circumstances.

emotionally charged allegations have no connection to plaintiffs' claims for damages." (Def.Mem. at 34)

The motion is denied. Rule 12(f) motions are viewed by courts with disfavor and are granted infrequently. 5A CHARLES A. WRIGHT & ARTHUR R. MILLER, FEDERAL PRACTICE AND PROCEDURE: CIVIL 2D § 1380 (1985). There rarely is reason to restrict the pleadings unless it can be shown that the statements sought to be stricken would prejudice the defendant. "Thus, a motion to strike frequently has been denied when no prejudice could result from the challenged allegations, even though the matter literally is within the categories set forth in Rule 12(f)." *Id.*

This Court does not allow pleadings to go to a jury. Even if the statements are immaterial or impertinent, they cannot prejudice defendants' case. Regardless of whether the challenged material is within the purview of Rule 12(f), the lack of any prejudice to the defendants from its inclusion in the pleadings militates against granting the motion to strike, and it is denied.

### Conclusion

For the foregoing reasons, the motion to dismiss is granted as to the corporate defendants and individual defendants, Philip J. Miller, Matthew R. Kornreich and William D. Kornreich. It is denied in all other respects. The motion to strike is denied. Plaintiffs may file an amended complaint within 21 days.

SO ORDERED.