**COMPOSITE HOLDINGS, L.L.C., et al., Plaintiffs,**

v.

**WESTINGHOUSE ELECTRIC CORPORATION, et al., Defendants.**

**No. 97 Civ. 8016 (LAK).**

United States District Court, S.D. New York.

Jan. 26, 1998.

William B. Pollard, III, David S. Douglas, Ina Bort, Kornstein, Veisz & Wexler, LLP, New York City, for Plaintiffs.

James L. Sonageri, Sonageri & Fallon, Hackensack, NJ, Paul A. Manion, Robert D. Finkel, Manion McDonough & Lucas, P.C., Pittsburgh, PA, for Defendants.

### MEMORANDUM OPINION

KAPLAN, District Judge.

The question presented by this motion is whether the plaintiffs (collectively "Composite") have alleged a legally sufficient basis for avoiding a forum selection clause contained in an agreement by which they purchased a business from defendants (collectively "Westinghouse").

### *Facts*

In December 1996, Composite purchased the Wittnauer watch business from Westinghouse for $27.35 million pursuant to an Asset

and Stock Purchase Agreement (the "Agreement"). As is customary in such contracts, the Agreement contained various representations and warranties concerning Wittnauer and its financial condition. The Agreement contained also a forum selection clause, which in relevant part provides:

> "*Exclusive Jurisdiction and Consent to Service of Process.* The parties agree that any legal action, suit or proceeding arising out of or relating to this Agreement or the transactions contemplated hereby shall be instituted in a Federal or state court sitting in Allegheny County, Pennsylvania which shall be the exclusive jurisdiction and venue of said legal proceedings and each Party hereto waives any objection which such party may now or hereafter have to the laying of venue of any such action, suit or proceeding, and irrevocably submits to the jurisdiction of any such court in any such action, suit or proceeding." [1]

Composite now claims that it was induced to enter into the Agreement by fraudulent representations and omissions in consequence of which the purchase price was overstated by more than $13 million.[2] It contends that Westinghouse misrepresented Witnauer's financial condition, concealed such facts as a declining sales trend in order to overstate Wittnauer's value, manipulated the recognition of revenues and expenses to portray Wittnauer as more profitable than in fact it was, short circuited and concealed an internal audit which would have disclosed facts indicative of significant overstatement of value, and provided Composite with false and misleading financial statements.[3]

Obviously mindful of the presumptive validity of forum selection clauses but nevertheless now dissatisfied with the contractual requirement that any dispute arising out of the transaction be litigated in Allegheny County (i.e., Pittsburgh), Pennsylvania, Composite has included in the complaint allegations the object of which is to defeat enforcement of that provision of the Agreement. It alleges that Westinghouse induced Composite to agree to the forum selection clause "[a]s part of the scheme to defraud" in an effort "to limit Westinghouse's liability and make plaintiffs' efforts to be made whole more difficult if defendants' fraudulent scheme were discovered." [4] It contends that the forum selection "is unenforceable as an aspect of the fraudulent scheme that cannot be countenanced by law." [5] There is no allegation, however, that Westinghouse (1) made any representation, true or false, relating to the forum selection clause, much less any such misrepresentation upon which Composite relied in agreeing to it, or (2) failed to disclose any fact that it was under a duty to disclose that was material to Composite's determination to accept that provision of the Agreement.

## Discussion

In *M/S Bremen v. Zapata Off-Shore Co.*,[6] the Supreme Court held that forum selection clauses in admiralty contracts are enforceable absent "fraud, undue influence, or overweening bargaining power." [7] Notwithstanding some scholarly discussion of the proper reach of the doctrine beyond admiralty,[8] the Second Circuit squarely held in *Jones v. Wei-*

---

1. Agreement § 14.13.

2. Cpt ¶¶ 2–3.

3. Cpt ¶¶ 4, 17–79.

4. *Id.* ¶ 6; *accord,* ¶¶ 80–81.

5. *Id.* ¶ 82.

6. 407 U.S. 1, 92 S.Ct. 1907, 32 L.Ed.2d 513 (1972).

7. *Id.* 407 U.S. at 13; *accord, Carnival Cruise Lines, Inc. v. Shute,* 499 U.S. 585, 591, 111 S.Ct.

1522, 113 L.Ed.2d 622 (1991); *see also, e.g., New Moon Shipping Co. v. Man B & W Diesel Ag,* 121 F.3d 24, 29 (2d Cir.1997); *Roby v. Corporation of Lloyd's,* 996 F.2d 1353, 1362–63 (2d Cir.1993).

8. *See, e.g.,* Young Lee, Note, *Forum Selection Clauses: Problems of Enforcement in Diversity Cases and State Courts,* 35 COLUM.J. TRANSNAT'L L. 663, 668–69 (1997); Walter W. Heiser, *Forum Selection Clauses in Federal Courts: Limitations on Enforcement After* Stewart *and* Carnival Cruise, 45 FLA.L.REV. 553, 556–63 (1993); Leandra Lederman, Note, *Viva* Zapata: *Toward a Rational System of Forum–Selection Clause Enforcement in Diversity Cases,* 66 N.Y.U.L.REV. 422, 430–31 (1991) ("NYU Note").

brecht[9] that *M/V Bremen* governs the enforceability of forum selection clauses in diversity and federal question cases as well. In consequence, *M/V Bremen* and its progeny control in this case, in which jurisdiction is premised both on a federal securities law claim and diversity of citizenship.[10]

■ It is equally clear that fraud in the inducement of a contract containing a forum selection clause governed by federal law is insufficient to avoid such a provision. Rather, such a forum selection clause will stand against a claim of fraud unless the party resisting enforcement alleges and proves that "the inclusion of that clause in the contract was the product of fraud"[11]—in other words, that the fraud was directed to the forum selection clause itself.[12] Moreover, Rule 9(b)[13] requires that allegations of fraud with respect to a forum selection clause—just as any other allegations of fraud—be made with particularity.[14] Composite's effort to avoid the forum selection clause in the Agreement fails on both counts.

■ To begin with, Composite does not claim that it was defrauded with respect to the forum selection clause itself. It claims no misrepresentation about or omission material to the clause. Rather, crediting Composite's allegations, as the Court must on this motion, Composite's theory is that Westinghouse sought the clause in order to improve its litigation position in the event that Composite discovered that Westinghouse had overstated the value and financial condition of Wittnauer. In other words, Composite urges that the clause be ignored because Westinghouse's *motive* in seeking it was impure, not because Composite was deceived

about the clause or anything closely related to the clause itself.

Composite's argument is insufficient as a matter of law. These "were sophisticated parties contracting voluntarily."[15] Composite knew, as would anyone in its position, that litigation concerning the transaction was a possibility—that is why the Agreement contained provisions dealing with forum selection, governing law, consent to jurisdiction and the like. It voluntarily agreed that any such litigation, even an action for fraud, would take place in Pittsburgh. There is no reason to disregard this undertaking on the ground that Westinghouse had an evil motive in seeking it as long as Westinghouse did not procure this specific agreement by deception.

To be sure, the Supreme Court in *Carnival Cruise Lines, Inc. v. Shute*,[16] in rejecting a challenge by a cruise ship passenger to a forum selection clause contained on the passenger ticket, noted that there was no suggestion that the cruise line had designated the particular forum in order to discourage legitimate claims.[17] Although Composite has not relied upon it, that comment, taken alone, would lend some modest support to its argument. But the statement cannot properly be taken alone. The entire passage reads as follows:

> "It bears emphasis that forum-selection clauses contained in form passage contracts are subject to judicial scrutiny for fundamental fairness. In this case, there is no suggestion that petitioner set Florida as the forum in which disputes were to be resolved as a means of discouraging cruise passengers from pursuing legitimate

9. 901 F.2d 17 (2d Cir.1990).

10. Cpt ¶ 8.

11. *Scherk v. Alberto–Culver Co.*, 417 U.S. 506, 519 n. 14, 94 S.Ct. 2449, 41 L.Ed.2d 270 (1974); accord, *Prima Paint Corp. v. Flood & Conklin Mfg. Co.*, 388 U.S. 395, 403–04, 87 S.Ct. 1801, 18 L.Ed.2d 1270 (1967).

12. *E.g., Haynsworth v. The Corporation*, 121 F.3d 956, 963 (5th Cir.1997); *Riley v. Kingsley Underwriting Agencies, Ltd.*, 969 F.2d 953, 960 (10th Cir.1992); *AVC Nederland B.V. v. Atrium Inv. Partnership*, 740 F.2d 148, 158 n. 16 (2d Cir. 1984); *Grace v. Corp. of Lloyd's*, No. 96 Civ.

8334(JGK), 1997 WL 607543, at *8 (S.D.N.Y. Oct.2, 1997); *Stamm v. Barclays Bank of New York*, 960 F.Supp. 724, 729 (S.D.N.Y.1997).

13. FED.R.CIV.P. 9(b).

14. *Riley*, 969 F.2d at 960; *Grace*, 1997 WL 607543, at *8.

15. *Haynsworth*, 121 F.3d at 965.

16. 499 U.S. 585, 111 S.Ct. 1522, 113 L.Ed.2d 622 (1991).

17. *Id.* 499 U.S. at 595.

claims. Any suggestion of such a bad-faith motive is belied by two facts: Petitioner has its principal place of business in Florida, and many of its cruises depart from and return to Florida ports." [18]

Thus, the Court did no more than indicate that the imposition of an inconvenient forum as part of a consumer contract in which the consumer has no meaningful opportunity to bargain on the point for the purpose of discouraging legitimate claims could run afoul of the overriding requirement of fairness. There is no such concern here, where sophisticated parties negotiated a 48–page, single spaced contract for a $27.35 million acquisition and where the forum selected is the county in which the defendant has its principal place of business [19]—its "hometown," to quote Composite.[20]

Composite does argue that "the Supreme Court reconceptualized its ... approach to forum selection clauses" in *Stewart Org., Inc. v. Ricoh Corp.*[21] and that a forum selection clause now "is merely one factor to be considered in determining where venue is proper." [22] Composite, however, seeks to draw more out of *Stewart* than it contains.

The case involved the question whether the district court erred in denying a motion to transfer an action from Alabama to this district pursuant to 28 U.S.C. § 1404(a) based on a contractual provision requiring a Manhattan forum. The Court simply held that the transfer motion should have been analyzed under the flexible standards of Section 1404(a) rather than beginning with the principles of the *Bremen* case, although it made clear that the *Bremen* doctrine would inform the application of Section 1404(a).[23] Indeed, the Court suggested, and the Second Circuit subsequently has held, that the flexible approach toward Section 1404(a) motions adopted in *Stewart* applies only to Section 1404(a) motions and has no bearing on enforcement of forum selection clauses in other procedural contexts.[24]

In this case, Westinghouse has not moved to transfer under Section 1404(a). The question it tenders is whether the action should be dismissed in consequence of the forum selection clause in this contract. As the Second Circuit held in *Jones*, that issue is governed by the *Bremen* line of cases.[25]

18. *Id.*

19. Cpt ¶ 14.

20. *Id.* ¶ 6.

21. 487 U.S. 22, 108 S.Ct. 2239, 101 L.Ed.2d 22 (1988).

22. Pl.Mem. 14.

23. 487 U.S. at 25–29.

24. *Jones*, 901 F.2d at 19; *see also* Heiser, 45 FLA.L.REV. at 590–95; NYU Note, 66 N.Y.U.L.REV. at 459.

25. *Jones*, 901 F.2d at 17–19.
Even if Composite's reading of *Stewart* were correct, this Court would enforce the forum selection clause. *Stewart* made clear that in considering the matter Under Section 1404(a), the "District Court [would] be called upon to address such issues as the convenience of the [contractually designated] forum given the parties' expressed preference for that venue, and the fairness of transfer in light of the forum-selection clause and the parties' relative bargaining power" as well as the public policy of the forum state. 487 U.S. at 29–30. In this case, there is no showing that Pittsburgh is an inconvenient forum. In view of the foregoing analysis of Composite's fraud claim, there is no reason for the Court to decline to give very substantial weight to the parties' "expressed preference for that venue" or to conclude that litigation in that venue would be unfair in light of the parties' agreement. Composite, as the purchaser in this complex and sophisticated transaction, did not lack bargaining power. Moreover, in contrast to the situation in *Stewart*, the public policy of New York strongly supports enforcement of forum selection clauses. *E.g., Brooke Group Ltd. v. JCH Syndicate 488*, 87 N.Y.2d 530, 534, 640 N.Y.S.2d 479, 481–82, 663 N.E.2d 635 (1996); *Micro Balanced Prod. Corp. v. Hlavin Ind. Ltd.*, 238 A.D.2d 284, 667 N.Y.S.2d 1, 1–2 (1st Dept. 1997); *Bell Constructors, Inc. v. Evergreen Caissons, Inc.*, 236 A.D.2d 859, 654 N.Y.S.2d 80, 81 (4th Dept.1997); *Shah v. Shah*, 215 A.D.2d 287, 288–89, 626 N.Y.S.2d 786, 788–89 (1st Dept.1995); *Price v. Brown Group, Inc.*, 206 A.D.2d 195, 198, 619 N.Y.S.2d 414, 416 (4th Dept.1994); *Hirschman v. Nat'l Textbook Co.*, 184 A.D.2d 494, 495, 584 N.Y.S.2d 199, 200 (2d Dept.1992); *British West Indies Guar. Trust Co. v. Banque Internationale a Luxembourg*, 172 A.D.2d 234, 567 N.Y.S.2d 731, 732 (1st Dept.1991); *see* N.Y.GEN.OBLIG.L. § 5–1402 (McKinney 1989).

Finally, Composite relies upon *Hoffman v. Minuteman Press Int'l, Inc.*,[26] which declined to follow the *Bremen–Scherk* line of cases in deciding a motion to transfer to a contractually designated forum. In so doing, it relied upon (a) the fact that the contract at issue was domestic rather than international, and (b) its view that application of the *Scherk* doctrine in the domestic context would be unwarranted because "[a] forum clause in a domestic contract may not constitute the parties' mutual agreement as to what is the best forum" but reflect instead a "trade-off [by one side] for other advantageous provisions in the contract." [27]

*Hoffman* is inapplicable here because it dealt with a transfer motion. In any case, this Court respectfully disagrees with it. While the *Hoffman* court was correct in noting that a party's agreement to a forum selection clause may be a concession to a suboptimal forum in order to achieve some other, more desirable consideration, that is as true in the international as in the domestic context. Moreover, that is not a persuasive basis for declining to give effect to the parties' agreement absent fraud as to the particular provision in question.

Composite's attack on the forum selection clause would fail even if its legal theory were sufficient. The complaint fails to allege the "fraud" upon which it relies with the particularity required by Rule 9(b).

Rule 9(b) of the Federal Rules of Civil Procedure requires that averments of fraud be made with particularity. The Rule requires not only that the circumstances of the alleged fraud be set forth, but that the plaintiff "allege facts that give rise to a strong inference of fraudulent intent." [28] Moreover, allegations of fraud made on information and belief are insufficient unless the facts are peculiarly within the knowledge of the defendant, and facts setting forth a sufficient basis for the inference of fraud must be alleged even in such cases.[29]

In this case, the specific allegation of fraud by which Composite seeks to avoid the forum selection clause is that Westinghouse included that provision in the Agreement in order to effectuate its scheme to overcharge Composite for Wittnauer by making recovery by Composite in subsequent litigation more difficult. The allegation is entirely conclusory. It is made on information and belief. No facts are set forth that logically give rise to an inference of fraudulent intent, particularly given that the designated forum is the county in which Westinghouse is headquartered and thus a quite natural selection for entirely ordinary reasons. Accordingly, Composite's fraud theory, even if legally sufficient, is insufficiently alleged.

Composite seeks to avoid dismissal by contending that the Court should defer decision pending discovery or an evidentiary hearing. Its argument, however, is misguided. The Court has assumed the truth of the well pleaded factual allegations of the complaint in deciding this motion but rules against Composite on the basis that those allegations are insufficient as a matter of law to defeat the forum selection clause. In these circumstances, there is no issue of fact to be resolved. No amount of proof of the allegation upon which Composite relies—that Westinghouse's motive was to render more difficult any recovery for its fraud in the transaction—or, for that matter, Westinghouse's fraud with respect to the deal itself, would change the result.

*Conclusion*

For the foregoing reasons, defendants' motion to dismiss the complaint is granted to

---

**26.** 747 F.Supp. 552 (W.D.Mo.1990).

**27.** *Id.* at 557.

**28.** *Campaniello Imports, Ltd. v. Saporiti Italia S.p.A.*, 117 F.3d 655, 663 (2d Cir.1997) (quoting *Shields v. Citytrust Bancorp, Inc.*, 25 F.3d 1124, 1128 (2d Cir.1994)).

**29.** *Campaniello*, 117 F.3d at 664; *Luce v. Edelstein*, 802 F.2d 49, 54 n. 1 (2d Cir.1986); *Schlick v. Penn–Dixie Cement Corp.*, 507 F.2d 374, 379 (2d Cir.1974), *cert. denied*, 421 U.S. 976, 95 S.Ct. 1976, 44 L.Ed.2d 467 (1975); *Segal v. Gordon*, 467 F.2d 602, 608 (2d Cir.1972); *ICD Holdings S.A. v. Frankel*, 976 F.Supp. 234, 245 (S.D.N.Y. 1997); *National Council of Young Israel v. Wolf*, 963 F.Supp. 276, 281 (S.D.N.Y.1997); *American Buying Ins. Services, Inc. v. S. Kornreich & Sons, Inc.*, 944 F.Supp. 240, 248–49 (S.D.N.Y.1996); *Spira v. Nick*, 876 F.Supp. 553, 557 (S.D.N.Y. 1995).

the extent that the action is dismissed without prejudice to the assertion of plaintiffs' claims in an action, suit or proceeding in a federal or state court sitting in Allegheny County, Pennsylvania.

SO ORDERED.