**McNIC OIL & GAS COMPANY,**
Plaintiff,

v.

**IBEX RESOURCES COMPANY, L.L.C.,**
**JMA Resources, Inc., and Jeffrey J.**
**McDougall, Defendants.**

No. Civ.A. 98–40243.

United States District Court,
E.D. Michigan,
Southern Division.

Sept. 28, 1998.

Eugene Driker, Matthew J. Boettcher, Barris, Sott, Detroit, MI, for plaintiff.

Steven F. Spender, Spender & Robb, Flint, MI, for defendants.

## MEMORANDUM OPINION AND ORDER DENYING DEFENDANTS' MOTION TO DISMISS FOR LACK OF JURISDICTION OVER THE PERSON AND GRANTING DEFENDANTS' MOTION TO TRANSFER VENUE PURSUANT TO 28 U.S.C. § 1404(a)

GADOLA, District Judge.

On July 31, 1998, defendants, IBEX Resources Company, L.L.C. (hereinafter IBEX), JMA Resources, Inc. (hereinafter JMA), and Jeffrey J. McDougall, filed a motion to dismiss for lack of personal jurisdiction. On the same day, defendants filed a motion to dismiss for improper venue. Alternatively, defendants request transfer of venue to a federal district court in the Western District Oklahoma. On August, 14, 1998, plaintiff, McNic Oil and Gas Co. (hereinafter MCNIC), responded to defendants' motion. Oral argument on both defendants' motions was heard by this Court on September 23, 1998. For the reasons set forth below, this Court will deny defendants' motion to dismiss for lack of personal jurisdiction, and grant defendants' motion for transfer of venue to a federal district court in the Western District of Oklahoma.

### Factual Background

Plaintiff, McNic Oil and Gas Co. (MCNIC), is a corporation incorporated in Detroit, Michigan, with its principal place of business allegedly in Detroit, Michigan.[1] Defendant,

---

1. Defendant makes the allegation that "[t]he place of incorporation of the Plaintiff is a smok- escreen." *See* Defendants' Motion to Dismiss for

Ibex Resources Company (IBEX), is a limited liability company registered in Oklahoma, with its principal place of business in Oklahoma City, Oklahoma. Defendant JMA Resources, Inc. (JMA) is a corporation incorporated in Oklahoma, with its principal place of business in Oklahoma City, Oklahoma. Defendant Jeffrey J. McDougall is a resident of Yukon, Oklahoma.

The dispute between the parties arose after the execution of a series of agreements relating to MCNIC's retaining of IBEX for the purposes of managing, acquiring, developing, and operating oil and gas leases, as well as selling the hydrocarbons produced therefrom. There are six principal agreements at issue:

(1) **Engagement Agreement** dated April 1, 1994 (*see* Appendix to Defendants' Motions, Tab 5);

(2) **Participation Agreement** (Exhibit A to Engagement Agreement) (*see* Appendix to Defendants' Motions, Tab 6);

(3) **Management Agreement** dated April 1, 1994 ((*see* Appendix to Defendants' Motions, Tab 4);

(4) **Confidentiality Agreement** dated March 21, 1994 (*see* Appendix to Defendants' Motions, Tab 3);

(5) **Joint Operating Agreement (JOA)** dated April 1, 1994 (*see* Appendix to Defendants' Motions, Tab 7); and

(6) **Sublease** dated September 1, 1997 (*see* Appendix to Defendants' Motions, Tab 8).

In its complaint, plaintiff requests an accounting, injunctive relief, damages for breach of contract and for breach of fiduciary duty, as well as a declaratory judgment determining the rights of the parties.

Most important for purposes of the instant motions, the Engagement Agreement, the Participation Agreement and the Management Agreement all contain forum selection clauses. These clauses provide that Michigan law will govern said agreements and that all litigation related to the agreements will be brought in a court located in Michigan. The Confidentiality Agreement, Joint Operating Agreement and Sublease do not contain forum selection clauses. Also important is the fact that defendant McDougall, in his capacity as president of IBEX, is a signatory of the Engagement Agreement, the Participation Agreement, and the Management Agreement. Defendant JMA, of which McDougall is the president, is not a signatory to these three agreements.

## I. DEFENDANTS' MOTION TO DISMISS FOR LACK OF PERSONAL JURISDICTION OVER DEFENDANT IBEX RESOURCES COMPANY, L.L.C., DEFENDANT JEFFREY J. MCDOUGALL, AND DEFENDANT JMA RESOURCES, INC.

### *Legal Standards*

The burden rests on the plaintiff to establish the existence of personal jurisdiction over the defendant. *See Welsh v. Gibbs,* 631 F.2d 436, 438 (6th Cir.1980). Satisfying this burden requires that "plaintiff may not stand on his pleadings but must, by affidavit or otherwise, set forth specific facts showing that the court has [personal] jurisdiction." *Theunissen v. Matthews,* 935 F.2d 1454, 1458 (6th Cir.1991). However, when determining whether there have been sufficient contacts with the forum state to establish personal jurisdiction, the court must interpret the pleadings and affidavits in the light most favorable to the plaintiff. *See id.* at 1459.

A federal court sitting in diversity may exercise personal jurisdiction over an out-of-state defendant only after engaging in a two-step analysis. First, the court must determine whether the state long-arm statute authorizes jurisdiction over the nonresident defendant. Second, the court must consider whether the exercise of personal jurisdiction would not deny defendant his constitutional right to due process of law. *See Omni Capital Int'l v. Rudolf Wolff & Co., Ltd.,* 484 U.S. 97, 104, 108 S.Ct. 404, 98 L.Ed.2d 415 (1987). There are two types of personal jurisdiction: general personal jurisdiction and specific or limited personal jurisdiction. The principles of general jurisdiction are applied when the plaintiff's cause of action is unrelated to the defendant's in-state activities. *Helicopteros Nacionales de*

---

Improper Venue, p. 8. Defendant maintains that plaintiff's offices and senior personnel were moved to Houston, Texas in December 1996. *See id.*

*Colombia, S.A. v. Hall,* 466 U.S. 408, 414 n. 9, 104 S.Ct. 1868, 80 L.Ed.2d 404 (1984). Specific jurisdiction is applied when the plaintiff's cause of action *arises out of* the defendant's transactions of business with the forum state. *Id.* at 414 n. 8. In the instant case, plaintiff does not allege that defendants engaged in any on-going in-state activities upon which general jurisdiction might obtain.[2] Plaintiff's cause of action "arises out of or is related to" the defendants' conduct within Michigan. *See Conti v. Pneumatic Prods. Corp.,* 977 F.2d 978, 981 (6th Cir.1992). Therefore, this Court must determine whether *specific* jurisdiction exists over each defendant.

▮▮▮ The first step in the inquiry is whether the requirements of due process have been met. *See Jeffrey v. Rapid Am. Corp.,* 448 Mich. 178, 529 N.W.2d 644 (Mich. 1995). This inquiry asks whether defendants have established such "minimum contacts" with the forum state, "that the maintenance of the suit does noᴛ offend 'traditional notions of fair play and substantial justice.'" *International Shoe Co. v. Washington,* 326 U.S. 310, 316, 66 S.Ct. 154, 90 L.Ed. 95 (1945). This standard is satisfied, and a defendant is subject to *in personam* jurisdiction, when contacts with the "forum State are such that [the defendant] should reasonably anticipate being haled into court there." *World–Wide Volkswagen Corp. v. Woodson,* 444 U.S. 286, 297, 100 S.Ct. 559, 62 L.Ed.2d 490 (1980). With respect to interstate contractual obligations, parties who "reach out beyond one state and create continuing relationships and

obligations with citizens of another state" are fairly subject to regulation and sanctions in the other state for the consequences of their activities. *Travelers Health Ass'n v. Virginia,* 339 U.S. 643, 647, 70 S.Ct. 927, 94 L.Ed. 1154 (1950).

▮▮▮ The Sixth Circuit has further refined the due process analysis by setting forth a three-part test to determine whether specific jurisdiction exists over a nonresident defendant. *See Cole v. Mileti,* 133 F.3d 433, 435 (6th Cir.1998). "First, the defendant must purposefully avail himself of the privilege of conducting activities within the forum state; second, the cause of action must arise from the defendant's activities there; and third, the acts of the defendant or consequences caused by the defendant must have a substantial enough connection with the forum state to make its exercise of jurisdiction over the defendant fundamentally fair." *Id.*

▮▮▮ The second step requires federal courts in diversity cases to apply the law of the forum state to determine whether personal jurisdiction exists. *Nationwide Mut. Ins. Co. v. Tryg Int'l Ins. Co.,* 91 F.3d 790, 793 (6th Cir.1996) (*citing LAK, Inc. v. Deer Creek Enterprises,* 885 F.2d 1293, 1298 (6th Cir.1989)). This Court will look to Michigan's long-arm statutes to determine whether specific personal jurisdiction exists over each defendant. With respect to defendant Jeffrey J. McDougall, sued in his individual capacity, jurisdiction must be ascertained through reference to Michigan's long-arm statute regarding specific jurisdiction over *individuals.*[3] Section 600.705 of the Michi-

---

2. Michigan's long-arm statute regarding general personal jurisdiction over individuals provides that

 [t]he existence of any of the following relationships between and individual and the state shall constitute a sufficient basis of jurisdiction to enable the courts of record of [Michigan] to exercise general jurisdiction over the corporation and to enable such courts to render personal judgments against the corporation.

 (1) Presence in the state at the time when process is served.

 (2) Domicile in the state at the time when process is served.

 (3) Consent, to the extent authorized by the consent and subject to the limitations provided in section 745 [addresses cases where written agreement is sole basis of jurisdiction].

 Mich.Comp.Laws Ann. § 600.701.

3. Section 600.705 relates to specific jurisdiction over individuals and provides as follows:

 [t]he existence of any of the following relationships between an individual or his agent and the state shall constitute a sufficient basis of jurisdiction to enable a court of record of [Michigan] to exercise limited personal jurisdiction over the individual and to enable the court to render personal judgments against the individual or his representative arising out of an act which creates any of the following relationships:

 (1) The transaction of any business within the state.

 (2) The doing or causing an act to be done, or consequences to occur, in the state resulting in an action for tort.

 (3) The ownership, use, or possession of real or tangible personal property situated within the state.

gan Compiled Laws provides that personal jurisdiction will attach if a cause of action arises out of an individual's "transaction of any business within the state." Mich.Comp. Laws § 600.705(1). This phrase, "any business within the state" has been very broadly interpreted. The term "any" includes "each" and "every" and comprehends even "the slightest" business transactions. *See Sifers v. Horen*, 385 Mich. 195, 199 n. 2, 188 N.W.2d 623 (1971).

With respect to personal jurisdiction over defendant JMA Resources, Inc., this Court must look to Michigan's long-arm statute regarding specific jurisdiction over *corporations.*[4] Just as with respect to specific jurisdiction over individuals, Section 600.715 of the Michigan Compiled Laws provides that personal jurisdiction will attach if a cause of action arises out of a corporation's "transaction of any business within the state." Mich .Comp.Laws § 600.715(1).[5]

> (4) Contracting to insure a person, property, or risk located within this state at the time of contracting.
> (5) Entering into a contract for services to be rendered or for materials to be furnished in the state by the defendant.
> (6) Acting as a director, manager, trustee, or other officer of a corporation incorporated under the laws of, or having its principal place of business within this state.
> (7) Maintaining a domicile in this state while subject to a marital or family relationship which is the basis of the claim for divorce, alimony, separate maintenance, property settlement, child support, or child custody.
> Mich.Comp.Laws § 600.705.

4. Plaintiff does not allege any on-going or lasting relationship between JMA and Michigan. Therefore Michigan's long-arm statute relating to *general* jurisdiction is not applicable in the case at bar. *See* M.C.L. § 600.711.

5. Section 600.715 of the Michigan Compiled Laws provides as follows:
> [t]he existence of any of the following relationships between a corporation or its agent and the state shall constitute a sufficient basis of jurisdiction to enable the courts of record of this state to exercise limited personal jurisdiction over such corporation and to enable such courts to render personal judgments against such corporation arising out of the act or acts which create any of the following relationships:
> (1) The transaction of any business within the state.
> (2) The doing or causing any act to be done, or consequences to occur, in the state resulting in an action for tort.

With respect to obtaining personal jurisdiction over defendant IBEX Resources Company, L.L.C., IBEX is *not* incorporated. IBEX, a limited liability company (L.L.C.), is instead an unincorporated voluntary association for purposes of Michigan law. Thus, this Court must apply Michigan's long-arm statute regarding specific jurisdiction over *unincorporated associations.*[6] The same provision applicable to both corporations and individuals regarding a "transaction of any business within the state" is likewise applicable to unincorporated associations. *See* Mich.Comp.Laws § 600.735(1).

In this case, an important additional factor in determining personal jurisdiction over defendants is the existence of forum selection clauses contained in the three principal agreements between MCNIC and IBEX. In *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 105 S.Ct. 2174, 85 L.Ed.2d 528 (1985),

> (3) The ownership, use, or possession of any real or tangible personal property situated within the state.
> (4) Contracting to insure any person, property, or risk located within this state at the time of contracting.
> (5) Entering into a contract for services to be performed or for materials to be furnished in the state by the defendant.
> Mich.Comp.Laws § 600.715.

6. Section 600.735 of the Michigan Compiled Laws provides as follows:
> [t]he existence of any of the following relationships between a partnership association or unincorporated voluntary association or an agent thereof and the state shall constitute a sufficient basis of jurisdiction to enable the courts of record of this state to exercise limited personal jurisdiction over such partnership association or unincorporated voluntary association and to enable such courts to render personal judgments against such partnership association or unincorporated voluntary association arising out of the act or acts which create any of the following relationships:
> (1) The transaction of any business within the state.
> (2) The doing or causing any act to be done, or consequences to occur, in the state resulting in an action for tort.
> (3) The ownership, use or possession of any real or tangible personal property situated within the state.
> (4) Contracting to insure any person, property, or risk located within this state at the time of contracting.
> (5) Entering into a contract for services to be rendered or for materials to be furnished in the state by the defendant.
> Mich.Comp.Laws § 600.735.

the United States Supreme Court addressed the impact of a forum selection clause on the issue of personal jurisdiction:

> [w]e have noted that, because the personal jurisdiction requirement is a waivable right, there are a "variety of legal arrangements" by which a litigant may give "express or implied consent to the personal jurisdiction of the court." *Insurance Corp. of Ireland v. Compagnie des Bauxites de Guinee*, [456 U.S. 694, 703, 102 S.Ct. 2099, 72 L.Ed.2d 492 (1982) ]. For example, particularly in the commercial context, parties frequently stipulate in advance to submit their controversies for resolution within a particular jurisdiction. *See National Equipment Rental, Ltd. v. Szukhent*, 375 U.S. 311, 84 S.Ct. 411, 11 L.Ed.2d 354 (1964). Where such forum-selection provisions have been obtained through "freely negotiated" agreements and are not "unreasonable and unjust," *The Bremen v. Zapata Off-Shore Co.*, 407 U.S. 1, 15, 92 S.Ct. 1907, 1916, 32 L.Ed.2d 513 (1972), their enforcement does not offend due process.

*Burger King*, 471 U.S. at 472 n. 14, 105 S.Ct. 2174.

### Analysis

### A. WHETHER PERSONAL JURISDICTION EXISTS WITH RESPECT TO DEFENDANT IBEX RESOURCES COMPANY, L.L.C.

 Applying the foregoing standards to the case at bar, this Court must first determine whether the exercise of personal jurisdiction over defendant IBEX Resources Company, L.L.C. comports with due process. Defendants argue that IBEX is an Oklahoma limited liability company and has not "purposely availed itself of the privilege of acting in Michigan or causing consequences in Michigan." *See* Defendants' Motion to Dismiss for Lack of Jurisdiction, pp. 10–11. Defendants do concede, however, that IBEX is a signatory party of three of the principal agreements at issue in this case: i.e., the Engagement Agreement, the Participation Agreement and the Management Agreement.

In the case at bar, defendant McDougall, as president and representative of IBEX, conducted extensive pre-contract negotiations with plaintiff MCNIC in the state of Michigan. McDougall himself traveled to the forum state numerous times. *See* Plaintiff's Response to Defendant's Motion to Dismiss for Lack of Jurisdiction, p. 4–5. After execution of the contracts, McDougall traveled to MCNIC's offices in Michigan to present progress reports and to discuss potential acquisitions. *See id.* at p. 4. In addition, "a constant stream" of paper and telephone calls flowed between IBEX's offices in Oklahoma and plaintiff's offices located in Michigan. As the *Cole v. Mileti* court held, such activities satisfy the requirement that defendant purposefully availed itself of the privilege of conducting activities within the forum state. *See* 133 F.3d at 435. Furthermore, the cause of action, i.e. breach of contract, "naturally arose" from McDougall's activities in Michigan, both before and after execution of said contracts. *See id.* (*citing CompuServe, Inc. v. Patterson*, 89 F.3d 1257, 1267 (6th Cir.1996); *In–Flight Devices Corp. v. Van Dusen Air, Inc.*, 466 F.2d 220, 229 (6th Cir.1972)). Finally, defendant IBEX, through its president McDougall, had "a substantial enough connection with the forum state to make its exercise of jurisdiction over the defendant fundamentally fair." *Id.*

 Alternatively, exercise of personal jurisdiction over IBEX is proper because IBEX agreed to be bound by contracts containing the forum selection clauses. IBEX has no basis for arguing that due process would be violated by maintenance of a law suit in the forum state. *See Burger King*, 471 U.S. at 472 n. 14, 105 S.Ct. 2174. As the *Burger King* decision acknowledged, a party may waive his right to object to the imposition of personal jurisdiction in cases involving forum selection clauses. "Where such forum-selection provisions have been obtained through 'freely negotiated' agreements and are not 'unreasonable and unjust,' ... their enforcement does not offend due process." *Id.* (*citing The Bremen v. Zapata Off–Shore Co.*, 407 U.S. 1, 92 S.Ct. 1907, 32 L.Ed.2d 513 (1972)). Accordingly, IBEX has waived its right to object to the imposition of personal jurisdiction by courts located in Michigan.[7]

---

7. Defendants maintain that, nevertheless, personal jurisdiction should not attach because the four

This Court's imposition of personal jurisdiction over IBEX is also permitted under Michigan's long-arm statute. Pursuant to Michigan Compiled Laws Section 600.735, the negotiations leading up to and the execution of the three aforementioned contracts certainly constitute "[t]he transaction of any business within the state." See M.C.L. § 600.735(1). As mentioned above, provisions relating to "any business" transacted in Michigan have been very broadly interpreted to mean even "the slightest" contact. *Sifers v. Horen,* 385 Mich. 195, 199 n. 2, 188 N.W.2d 623 (1971).

This Court therefore finds that exercise of personal jurisdiction over defendant IBEX is proper.

## B. WHETHER PERSONAL JURISDICTION EXISTS WITH RESPECT TO DEFENDANT MCDOUGALL, IN HIS INDIVIDUAL CAPACITY.

McDougall has been sued in his individual capacity, and argues that he, as an individual, does not have the requisite "minimum contacts" with the state of Michigan. *See* Defendants' Motion to Dismiss for Lack of Jurisdiction, p. 8. Plaintiff argues that McDougall is a signatory, in his capacity as president of IBEX, to all three of the principal agreements at issue in this case: i.e., the Engagement Agreement, the Participation Agreement and the Management Agreement. Defendants respond that McDougall signed those documents in his capacity as president of IBEX, and not in his individual capacity.

Plaintiff also argue that IBEX is "a mere shell company." *See* Plaintiff's Response to Defendants' Motion to Dismiss for Lack of Jurisdiction, p. 4. Plaintiff alleges that IBEX has no employees, and is owned 98% by McDougall (the other 2% by his children). *Id.* Plaintiff further asserts that it was not until "late in the negotiation stages" that McDougall indicated a desire to set up IBEX as a signatory party, with "virtually all of the work to be done under agreements by JMA." *Id.*

The crucial issue thus becomes whether McDougall, the individual, may defeat jurisdiction by virtue of the fact that he signed documents as a corporate officer, and not in an individual capacity. Defendant McDougall's argument is unavailing. As plaintiff recognizes, "Michigan courts have not adopted the fiduciary shield doctrine, and due process does not command [a federal district court located in Michigan] to apply it in the absence of state law requirements." *Chicago Blower Corp. v. Air Sys. Assocs.,* 623 F.Supp. 798, 804 (E.D.Mich.1985). In *Chicago Blower,* the Michigan district court remarked upon *Calder v. Jones,* 465 U.S. 783, 104 S.Ct. 1482, 79 L.Ed.2d 804 (1984), a case wherein employees who had acted in their official capacity attempted to shield themselves from suit in their individual capacity. The *Chicago Blower* court held that

> [t]he *Calder* decision has been interpreted by almost all courts as holding that where the state long-arm statute extends to the

factors of Michigan Compiled Laws Section 600.745 have not been satisfied. Pursuant to that statute,

> if the parties agreed in writing that an action on a controversy may be brought in this state and the agreement provides *the only basis* for the exercise of jurisdiction, a court of this state shall entertain the action if all the following occur:
> (a) The court has power under the law of this state to entertain the action.
> (b) This state is a reasonably convenient place for the trial of the action.
> (c) The agreement as to the place of the action is not obtained by misrepresentation, duress, the abuse of economic power, or other unconscionable means.
> (d) The defendant is served with process as provided by court rules.

M.C.L. § 600.745(2) (emphasis added). Defendants argue that Michigan is not "a reasonably

convenient place for the trial" and that "the agreement ... [was] obtained by ... abuse of economic power." M.C.L. § 600.745(2)(c).

Despite defendants' assertions, this statute need not be applied in the case at hand. Defendants have not shown that the forum selection clause was "the only basis" for the exercise of jurisdiction, as required under Section 600.745. As plaintiff points out and as discussed above, McDougall, the president of IBEX, had many contacts with Michigan, making trips to the forum state to negotiate the IBEX agreements before execution, as well as to present progress reports and to discuss potential acquisitions, after execution. *See* Plaintiff's Response to Defendants' Motion to Dismiss for Lack of Jurisdiction, p. 4. Plaintiff also alleges that there was "a constant stream of [data], paper, and telephone calls" between IBEX's offices and Michigan. *See id.*

limit of due process [such as in Michigan], the exercise of jurisdiction over corporate officers who individually have had minimum contacts with the forum is permissible, even if those contacts were made in their capacity as corporate officers. *Chicago Blower,* 623 F.Supp. at 804.

 In light of the *Calder* and *Chicago Blower* precedents, Mr. McDougall may not argue that he was shielded from personal jurisdiction because his contact with the forum state was conducted in a corporate, and not an individual, capacity. As discussed above, Mr. McDougall's activities constituted sufficient "minimum contacts" with the state of Michigan such that due process would not be violated by imposition of personal jurisdiction over defendant. *See International Shoe Co.,* 326 U.S. at 316, 66 S.Ct. 154. Pursuant to Michigan Compiled Laws, Section 600.705, Mr. McDougall has performed business transactions within the state of Michigan, and therefore this Court has personal jurisdiction over McDougall, as an individual *and* in his capacity as president of IBEX.

## C. WHETHER PERSONAL JURISDICTION EXISTS WITH RESPECT TO JMA RESOURCES, INC.

 The final issue is whether personal jurisdiction exists with respect to defendant JMA Resources, Inc. (JMA). JMA is *not* a signatory to any of the three contracts containing the Michigan forum selection clause. Plaintiff argues that IBEX is "a mere shell company" and that "McDougall's appearances in Michigan before execution of the agreements were supposedly on behalf of JMA." *See* Plaintiff's Response to Defendants' Motion to Dismiss for Lack of Jurisdiction, p. 4. Almost immediately after execution of the three principal agreements (between MCNIC and IBEX), plaintiff claims that IBEX executed a Management Agreement with JMA, delegating to JMA "virtually all of its tasks under the MCNIC agreements." *Id.*

This Court finds that McDougall was also representing JMA in pre-contract negotiations conducted in Michigan. As discussed above, those activities constituted sufficient "minimum contacts" with the state of Michigan such that the *International Shoe* due process requirements were satisfied. *See International Shoe Co.,* 326 U.S. at 316, 66 S.Ct. 154. JMA, through its representative McDougall, has availed itself of the laws of Michigan, through its representative McDougall, such that it "should reasonably anticipate being haled into court [in Michigan]." *World–Wide Volkswagen Corp. v. Woodson,* 444 U.S. 286, 297, 100 S.Ct. 559, 62 L.Ed.2d 490 (1980). The assertion that McDougall was representing JMA is further strengthened by the fact that McDougall is the president of JMA. *See* Plaintiff's Response to Defendants' Motion to Dismiss for Lack of Jurisdiction, p. 6. Since McDougall negotiated a contract on behalf of JMA, and then at the last minute signed the documents as president of IBEX, JMA should not be permitted to escape this Court's *in personam* jurisdiction just because JMA was not a signatory to the MCNIC–IBEX agreements.[8]

For all of the preceding reasons, this Court's exercise of personal jurisdiction over all the defendants is constitutional. Accordingly, defendants' motion to dismiss for lack of personal jurisdiction will be denied.

## II. DEFENDANTS' MOTION TO DISMISS FOR IMPROPER VENUE OR, ALTERNATIVELY, TO TRANSFER VENUE

### *Legal Standards*

As an initial matter, plaintiff must show that venue in this district is proper under 28 U.S.C. § 1391(a). That statute provides, in pertinent part, that

A civil action wherein jurisdiction is founded only on diversity of citizenship may, except as otherwise provided by law, be brought only in (1) a judicial district where

---

**8.** Defendants cite Michigan case law, arguing that a forum selection clause does not bind non-parties. *See Offerdahl v. Silverstein,* 224 Mich. App. 417, 569 N.W.2d 834, 836 (Mich.App.1997). Nevertheless, personal jurisdiction over JMA need not be based on the forum selection clause, as discussed above, because it appears that there were sufficient minimum contacts between JMA (as represented by McDougall) and the state of Michigan prior to (and after) the signing of the three principal agreements.

738

any defendant resides, if all defendants reside in the same State, (2) a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred, or a substantial part of property that is the subject of the action is situated, or (3) a judicial district in which any defendant is subject to personal jurisdiction at the time the action is commenced, if there is no district in which the action may otherwise be brought.

28 U.S.C. § 1391(a). If defendants succeed in their attack on plaintiff's assertion of venue in this district, then this Court must either dismiss the case for lack of venue or transfer venue to "any district ... in which it could have been brought." *See* 28 U.S.C. § 1406(a) (providing that "[t]he district court of a district in which is filed a case laying venue in the wrong division or district shall dismiss, or if it be in the interest of justice, transfer such case to any district or division in which it could have been brought").

Assuming arguendo that this Court does not dismiss this action for lack of venue, Section 1404, Title 28 of the United States Code must be applied to determine whether transfer is proper in the instant case. That section provides that "[f]or the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought." 28 U.S.C. § 1404(a). Courts interpreting Section 1404(a) have held that a court may transfer an action when: "(1) the transferred action could have been brought in the transferee court, (2) a transfer would serve the interests of justice, and (3) a transfer would serve the convenience of the parties and witnesses." *In re Air Crash Disaster at Detroit Metropolitan Airport on August 16, 1987,* 737 F.Supp. 391, 393 (E.D.Mich.1989).

The existence of a contractual forum selection clause, such as is the case presently before this Court, is an important factor to be weighed in the calculus of deciding a motion to transfer venue. *See The Bremen v. Zapata Off–Shore Co.,* 407 U.S. 1, 92 S.Ct. 1907, 32 L.Ed.2d 513 (1972). Although not dispositive, a party faces a "heavy burden of proof" to set aside a forum selection clause on grounds of inconvenience. *See id.* at 17, 92 S.Ct. 1907; *see also Water*

*Energizers, Ltd. v. Water Energizers, Inc.,* 788 F.Supp. 208, 212–13 (S.D.N.Y.1992). The general rule is that forum selection clauses are regularly enforced. *See Carnival Cruise Lines, Inc. v. Shute,* 499 U.S. 585, 111 S.Ct. 1522, 113 L.Ed.2d 622 (1991).

In *Stewart Organization, Inc. v. Ricoh Corp.,* 487 U.S. 22, 108 S.Ct. 2239, 101 L.Ed.2d 22 (1988), however, the Supreme Court held that 28 U.S.C. § 1404(a)

is intended to place discretion in the district courts to adjudicate motions for transfer according to an individualized, case-by-case consideration of convenience and fairness. A motion to transfer under § 1404(a) calls on the district court to weigh in the balance a number of case-specific factors, and the presence of a forum-selection clause will figure centrally in the calculus. A forum-selection clause should receive neither dispositive consideration nor no consideration, but rather the consideration for which Congress provided in § 1404(a). Section 1404(a) must be applied since it represents a valid exercise of Congress' authority under Article III as augmented by the Necessary and Proper Clause.

*Stewart,* 487 U.S. at 23, 108 S.Ct. 2239. Federal courts, especially in the Second Circuit, have interpreted *Stewart* narrowly, holding that "the flexible approach toward Section 1404(a) motions adopted in *Stewart* applies only to Section 1404(a) motions and has no bearing on enforcement of forum selection clauses in other procedural contexts." *Composite Holdings, L.L.C. v. Westinghouse Elec. Corp.,* 992 F.Supp. 367, 370 (S.D.N.Y. 1998). In the context of the case at bar, *Stewart* does apply and requires that this Court balance a number of case-specific factors, among which "the forum selection clause will figure centrally." *Stewart,* 487 U.S. at 23, 108 S.Ct. 2239. These additional factors to weigh in the balance include the following: "(1) the convenience of the parties; (2) the convenience of the witnesses; (3) the relative ease of access to sources of proof; (4) the availability of process to compel attendance of unwilling witnesses; (5) the cost of obtaining willing witnesses; (6) the practical problems associated with trying the case

most expeditiously and inexpensively; and (7) the interest of justice." *Helder v. Hitachi Power Tools,* 764 F.Supp. 93, 96 (E.D.Mich.1991).

## Analysis

As a threshold issue, defendants argue that venue in this district is not proper under 28 U.S.C. § 1391(a). As discussed above, that statute provides for three separate bases for grounding venue in a particular district:

> (1) a judicial district where any defendant resides, if all defendants reside in the same State, (2) a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred, or a substantial part of property that is the subject of the action is situated, or (3) a judicial district in which any defendant is subject to personal jurisdiction at the time the action is commenced, if there is no district in which the action may otherwise be brought.

28 U.S.C. § 1391(a). Defendants assert that "all or a substantial part of the acts giving rise to the claims for relief ... and a substantial part of the properties are located in Oklahoma." However, "a substantial part of the events or omissions giving rise to the claim" *has occurred* in Michigan, to wit: the negotiation and execution of the three principal agreements. For this reason, venue is proper in this district and this Court will not dismiss the case for lack of venue. *See* 28 U.S.C. § 1406(a)

Since venue is proper in this district, defendants further argue that pursuant to 28 U.S.C. § 1404, this Court has the discretion to transfer venue to a more convenient forum. As discussed above, this Court has the discretion under Section 1404 to transfer the case "[f]or the convenience of parties and witnesses, in the interest of justice" to "any other district or division where it might have been brought." 28 U.S.C. § 1404(a). Defendants reject plaintiff's reliance on the forum selection clauses, correctly asserting that such clauses are not dispositive factors in the Court's calculus. Defendants request transfer to a federal court located in the Western District of Oklahoma.

The first question in determining the appropriateness of a request for transfer of venue is whether "the transferred action could have been brought in the transferee court." *In re Air Crash Disaster at Detroit Metropolitan Airport on August 16, 1987,* 737 F.Supp. 391, 393 (E.D.Mich.1989). Put another way, the issue is whether plaintiff could properly have brought the instant action in the Western District of Oklahoma. The Western District of Oklahoma would satisfy Section 1391, providing that venue is proper in "a judicial district where any defendant resides, if all defendants reside in the same State." Fed.R.Civ.Proc. 1391(a)(1). In the case at bar, defendant IBEX is a limited liability company located in Oklahoma, with its principal place of business in Oklahoma City, Oklahoma. Defendant JMA is a corporation incorporated in Oklahoma, with its principal place of business in Oklahoma City, Oklahoma. Finally, defendant Jeffrey J. McDougall is a resident of Yukon, Oklahoma. Since all defendants are residents of Oklahoma, plaintiff could have brought the instant action in a federal district court located in the Western District of Oklahoma.

The next issue is whether a transfer of venue would serve the convenience of the parties and witnesses. Defendants argue that the present district is inconvenient for their witnesses and for defendants themselves, and that plaintiff would not be substantially inconvenienced by transfer. As defendants assert, there are approximately twenty-seven witnesses with knowledge of relevant facts relating to the instant case. *See* Defendant's Motion to Dismiss for Lack of Venue, p. 5. Of those, sixteen are located in Oklahoma City, six are in Houston, one is in Kansas, and only four of the twenty-seven are in Michigan. *See id.* All four Michigan witnesses are employed by plaintiff's parent company. *See id.* Federal courts have considered convenience of the witnesses to be "[p]robably the most important factor, and the factor most frequently mentioned, in passing on a motion to transfer under 28 U.S.C. § 1404(a)." 15 Wright, Miller & Cooper, *Federal Practice and Procedure: Jurisdiction 2d* § 3851 (2d ed.1986).

This Court must also weigh in the balance the relative ease of access to sources of proof

in the transferee district. *See Helder,* 764 F.Supp. at 96. Defendants argue that the primary sources of proof in the trial of this case will be the books and records located in Oklahoma. In addition, almost all the properties relevant to the instant case are located in Oklahoma, Kansas, and Texas; none are in Michigan. *See* Defendant's Motion to Dismiss for Lack of Venue, p. 6. Further strengthening defendants' position is the fact that plaintiff MCNIC's corporate administrative offices were moved to Houston, Texas in 1996.[9]

Other factors this Court must consider is the availability of process to compel attendance of unwilling witnesses, the cost of obtaining willing witnesses, and the practical problems associated with trying the case most expeditiously and inexpensively. *See Helder,* 764 F.Supp. at 96. Defendants maintain that witnesses residing in Oklahoma who are not parties cannot be compelled to attend a trial held in Michigan. *See* Fed. R.Civ.Proc. 45(c)(3). Process issued out of Oklahoma City would be valid for the entire Western half of Oklahoma, which would encompass almost all of the potential witnesses. Those same witnesses who are not parties cannot be compelled to attend a trial held in this Court. *See* Fed.R.Civ .Proc. 45(c)(3). Consequently, trial in this district would work a substantial hardship to defendants because there would be an unavailability of process to compel attendance of unwilling witnesses.

Defendants further assert that the cost of accommodating willing witnesses would be "astronomical." *See* Defendants' Motion to Dismiss for Improper Venue, p. 6. Regarding plaintiff's burden, defendant maintains that there will be little or no difference in the cost for plaintiff to send its principal witnesses from Houston to Oklahoma City instead of to Flint, Michigan. *See id.* In addition, defendants contend that a trial in Michigan would

entail practical and logistical problems regarding sequencing and preparation of the *seventeen* witness who would have to be brought in from Oklahoma City, Oklahoma. *See id.* at p. 7.

■ In sum, defendants have made a convincing case for asserting that Michigan would not be a reasonably convenient place for trial. Plaintiff's most promising argument for retaining venue in the Eastern District of Michigan is based upon the forum selection clauses contained in the three principal agreements between IBEX and MCNIC.[10] As discussed above, while forum selection clauses should "figure centrally" in the Court's decision-making, such clauses "should receive neither dispositive consideration nor no consideration." *Stewart,* 487 U.S. at 23, 108 S.Ct. 2239. Instead, the Court is required to balance all the relevant factors, in deciding a motion for transfer under 28 U.S.C. § 1404(a). *See id.* In the instant case, this balance weighs in favor of defendants, considering the substantial inconvenience to defendants' witnesses and the fact that plaintiff would not be substantially inconvenienced by the transfer. The interests of justice would be better served by a transfer of venue to the Western District of Oklahoma. Accordingly, this Court will grant defendants' motion.

## *ORDER*

**NOW, THEREFORE, IT IS HEREBY ORDERED** that defendants' motion to dismiss for lack of personal jurisdiction is **DE-NIED.**

**IT IS FURTHER ORDERED** that defendants' motion to transfer venue pursuant to Federal Rule of Civil Procedure Section 1404(a) to a federal district court located in

---

9. As plaintiff admitted at oral argument, the only offices of MCNIC still located in Michigan are its accounting offices in Detroit, Michigan. This fact bears on the issue of whether plaintiff would be substantially inconvenienced by transfer of the case to Oklahoma. Since plaintiff is, for all intents and purposes, based in Texas, it does not appear that a trial in Oklahoma would be substantially more inconvenient to plaintiff than a trial in Michigan.

10. Plaintiff also argues that under the parties' agreements, Michigan law will determine the issues of this case. This Court, plaintiff continues, "is more familiar with Michigan law and its applicability to the issues before it than a court in Oklahoma." *See* Plaintiff's Response to Defendants' Motion to Dismiss for Improper Venue, p. 6. This Court, however, does not find this to be a significant countervailing factor.

the Western District Oklahoma is **GRANT-ED.**

**SO ORDERED.**